# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00486-CV

**G. L. Vinson/Charles M. Black, Jr.; Kenneth Bramblett; Jane Bramblett; Mural Cook; Lynne Cook; Travis Duncan; Lydia Taylor McBride; Betty Melcher; Harold J. Nelson; Nikki Perrotta; Janet R. Rader; Anne Marie St. Martin; Jerome Urbanek; Theresa Wilson; John S. Avery; Judy Avery; Darin Digby; Barbara Digby; Jana Buis; Julie Dees; and John Sharp Avery, Appellants**

**v.**

**Charles and Cora A. Brown/G. L. Vinson, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. 98-07508, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING**

---

The dispute in this case involves various property owners= easement rights to a park that fronts on Lake Travis. G. L. Vinson (AVinson@), the owner of the servient estate, appeals the trial court=s judgment declaring that Charles and Cora A. Brown (Athe Browns@) have an express easement to use the park. In the court below, a number of other property owners identified as Charles M. Black, Jr., *et al* (Athe Intervenors@) intervened in Vinson=s lawsuit.[1] The Intervenors= appeal challenges the trial court=s failure to grant them easements to use the park. We will affirm the trial court=s judgment.

---

[1] At trial, there were thirty-three Intervenors, but twelve did not join in this appeal. The Intervenors who join in this appeal are Charles M. Black, Jr., Kenneth Bramblett, Jane Bramblett, Mural Cook, Lynne

# BACKGROUND

In the 1940s, G. A. and Florence Butler Draper began to develop a subdivision on property they owned on the north shore of Lake Travis in rural Travis County. The Drapers divided the property into lots, named the subdivision Draper=s Cove, and began selling these lots in 1948. Luster B. Hobbs purchased lots nine and ten in the subdivision in 1948. Fifty of the lots in Draper=s Cove, including lots nine and ten, do not front on Lake Travis. The deed of conveyance for lots nine and ten (Athe Hobbs deed@) includes the following language intended to create an easement:

> [A] permanent [easement] of the use, together with the owners of other tracts out of said subdivision made by G. A. Draper in the Malinda Settle Survey, of a park located about five hundred (500) feet East of Block No. One (1) of a subdivision out of said survey made by Viggo Miller September 14, 1946 . . . and which park extends to a cove on the Lake and the boundaries of which park to be marked and established by said G. A. Draper.

---

Cook, Travis Duncan, Lydia Taylor McBride, Betty Melcher, Harold J. Nelson, Nikki Perrotta, Janet R. Rader, Anne Marie St. Martin, Jerome Urbanek, Theresa Wilson, John S. Avery, Judy Avery, Darin Digby, Barbara Digby, Jana Buis, Julie Dees, and John Sharp Avery.

The park described in the Hobbs deed lies at the center of the dispute in this case. Although the Hobbs deed grants Hobbs use of the easement Atogether with the owners of other tracts out of said subdivision,@ the deeds of others who purchased lots in the subdivision from the Drapers do not contain express grants of easement to the park area.**2** However, there is evidence that many, if not all, of the property owners in Draper=s Cove have historically used the park area for recreation and access to Lake Travis.

G. A. Draper, also known as APa Draper,@ was pre-deceased by his wife. He died in 1973 without ever having explicitly marked and established the boundaries of the park as provided for in the Hobbs deed. Draper=s last will and testament (Athe Will@) contains a number of provisions relevant to this dispute. The Will authorizes the executor to sell or dispose of any or all of Draper=s land. It also authorizes the executor to complete the Draper=s Cove subdivision, including setting aside park or community use areas for the benefit of property owners in the subdivision. The executor of Draper=s estate conveyed all land owned by Draper, including the park area in dispute, to appellant G. L. Vinson in 1976. Although Vinson did not mark and establish the boundaries of the park after this conveyance, the property owners in Draper=s Cove continued to use this area of the Vinson property for recreational and lake-access purposes. Charles and Cora A. Brown, appellees, are successors-in-interest to Hobbs, having purchased lots nine and ten in 1980.

---

**2** The deeds of many of these property owners contain express grants of easement to Athe East beach@ or Athe West beach@ or both. At trial, these property owners asserted that AEast beach@ refers to the disputed park area. This issue was submitted to the jury, which failed to find in favor of the property owners. In its judgment, the trial court set the location and boundaries of these two beach areas, both of which front on Lake Travis.

In 1985, Vinson installed a locked gate at the road entrance to the park area and told the property owners in Draper=s Cove that they could only access the park by obtaining permission and a key from him. Many, if not all, of the property owners did so, and the use of the park by the property owners continued as before. However, in 1996, Vinson changed the lock on the gate and informed the property owners that he was denying future access to the park to anyone who did not purchase an easement from him for $5,000. Three property owners purchased easements from Vinson, and he created a metes and bounds description of the park for these purchasers. The Browns, protesting that they already possessed an express easement as successors-in-interest to Hobbs, did not purchase an easement, and Vinson never issued them a key to the newly locked gate.

In 1998, Vinson sued the Browns for damages and injunctive relief, alleging that they had on several occasions damaged the gate, chain, and lock he had installed to control access to the park. The Browns counterclaimed, seeking a declaratory judgment that they had an express easement to use the park. A number of other property owners intervened in the lawsuit to establish that they too had easement rights to use the park, either by express grant, prescription, implication, or estoppel.

The trial court determined certain issues as a matter of law and submitted other issues to the jury for determination. Among those issues decided by the trial court as a matter of law were the following: the Browns have an express easement appurtenant to lots nine and ten to use the park for recreational purposes; the Intervenors do not have an express easement to use the park; the Will did not create or set aside park or community use areas for the benefit of Draper=s Cove property owners; the Will did not create any interest in real estate, and did not create or grant any property rights or easements; and the executor of Draper=s estate did not exercise any of the authority granted under the Will to set aside park or

**4**

community use areas for the benefit of Draper=s Cove property owners. The trial court submitted the questions of whether the Intervenors possess easement rights to the park by prescription, implication, or estoppel to the jury. The jury failed to find that the Intervenors have any easement rights to the park. The trial court rendered judgment accordingly.

Vinson appeals the trial court=s declaration of an express easement in favor of the Browns. The Intervenors also appeal, challenging the trial court=s findings concerning an express easement and the construction of the Will as well as the jury=s failure to find for them on the issues of easements by implication and estoppel.

## DISCUSSION

### Vinson=s Appeal

Vinson raises two points of error in his appeal. In his first point of error, Vinson argues that the Hobbs deed violates the Statute of Frauds because it does not contain a legally sufficient description of the location of the park. *See* Tex. Prop. Code Ann. ' 5.021 (West 1984). In his second point of error, he argues that there is no evidence, or in the alternative, insufficient evidence, of a legally sufficient property description of the park.

As an interest in land, an express easement is subject to the Statute of Frauds. *Anderson v. Tall Timbers Corp.*, 378 S.W.2d 16, 24 (Tex. 1964). Although the Statute of Frauds provides that all contracts for the sale of real estate must be in writing, no requirements for the writing, other than that it be signed by the grantor, are provided. *Kmiec v. Reagan*, 556 S.W.2d 567, 569 (Tex. 1977). It has been left to the courts to determine the substance and form a written instrument must satisfy before it is

**5**

enforceable. *Id.* Insofar as a description of the property to be conveyed is concerned, the writing must furnish within itself the means or data by which that particular land may be identified with reasonable certainty. *Id.*

Vinson contends that the easement claimed by the Browns cannot be identified with reasonable certainty because its description in the Hobbs deed is too vague. For example, Vinson argues that the phrase Aabout five hundred (500) feet East of Block No. One@does not provide a precise starting point for measuring from block one to the park, does not give an exact distance from that starting point, and does not specify whether the park is due east or merely in an easterly direction from block one. Similarly, he points out that the Acove on the Lake@mentioned in the description is not named or otherwise explicitly identified. This vague language, Vinson asserts, leaves the location of the easement too uncertain to satisfy the Statute of Frauds.

However, the fact that an easement clause is vague, indefinite, or uncertain does not authorize a court to completely ignore the valuable right thereby granted. *See Adams v. Norsworthy Ranch*, 975 S.W.2d 424, 428 (Tex. App.CAustin 1998, no pet.). The purpose of a description in a written conveyance is not to identify the land, but to afford a means of identification. *Jones v. Kelley*, 614 S.W.2d 95, 99B100 (Tex. 1981). If enough appears in the description so that a person familiar with the area can locate the premises with reasonable certainty, it is sufficient to satisfy the Statute of Frauds. *Gates v. Asher*, 280 S.W.2d 247, 248-49 (Tex. 1955).

Certainly, the Hobbs deed uses vague language and does not contain a metes and bounds description of the park. With express easements, however, an exact designation of location is unnecessary,

**6**

as long as the tract of land that will be burdened by the easement is sufficiently identified. *See Jones v. Fuller*, 856 S.W.2d 597, 602 (Tex. App.CWaco 1993, no writ). The Hobbs deed sufficiently identifies the land to be burdened by its reference to ABlock No. One (1) of a subdivision out of said survey made by Viggo Miller.@ It then describes the location for the easement in general terms, with the provision that the exact boundaries of the park will be marked and established by Draper at a later time. Although Draper never marked and established these boundaries, this inaction does not cause the grant to fail. We evaluate whether a description of land is sufficient to comply with the Statute of Frauds as of the time the parties contracted. *Eland Energy v. Rowden Oil & Gas*, 914 S.W.2d 179, 186 (Tex. App.CSan Antonio 1995, writ denied). At the time the grant was made, the provision for Draper to choose the park=s boundaries, within a generally-described area, furnished the means to identify the property interest conveyed with reasonable certainty. We therefore conclude that the description of the park in the Hobbs deed is legally sufficient to satisfy the Statute of Frauds. Vinson=s first point of error is overruled.

In his second point of error, Vinson contends that there is no evidence or, in the alternative, insufficient evidence, to establish the property description of the park. Vinson asserts that the trial court erred in declaring that the boundaries of the park are those set out in the metes and bounds description created by Vinson for the property owners who purchased easements from him. In reviewing a no-evidence point, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party=s favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998). We will uphold the finding if more than a scintilla of evidence supports it. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). The evidence in support of a

**7**

finding amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. *Id.* When reviewing a verdict to determine the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if the evidence is so weak as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

When an express easement is described in general terms without specifying its location, the right to select the location usually belongs to the grantor. *Holmstrom v. Lee,* 26 S.W.3d 526, 533 (Tex. App.CAustin 2000, no pet.). But this right must be exercised in a reasonable manner, and if the grantor of an easement fails to establish its location, the grantee may do so. *Samuelson v. Alvarado*, 847 S.W.2d 319, 323 (Tex. App.CEl Paso 1993, no writ). The grantee=s use of the easement, with the consent or acquiescence of the grantor, is sufficient to establish the easement=s location. *See Adam*s, 975 S.W.2d at 428; *Elliott v. Elliott*, 597 S.W.2d 795, 802 (Tex. Civ. App.CCorpus Christi 1980, no writ).

The Hobbs deed expressly reserved to Draper, the grantor, the right to mark and establish the boundaries of the park. His failure to do so allowed the grantees, Hobbs and his successors-in-interest, to establish the boundaries by their use of the park area. The trial court found that the grantees= historic use of the park area had established these boundaries, and that the boundaries thus established were identical to the metes and bounds description later created by Vinson for subsequent easement purchasers. At trial, evidence was presented pertaining to the historic use of the park area by the grantees and other Draper=s Cove property owners. This evidence included various deeds and instruments relating to Draper=s Cove, testimony by the Browns and other property owners, the testimony of a land surveyor, and a number of letters from Vinson to the property owners. Considering all this evidence in the light most favorable to the

**8**

verdict, as well as considering all the evidence from a neutral perspective, we conclude that there is both legally and factually sufficient evidence to support the trial court=s finding. Vinson=s second point of error is overruled.

***The Intervenors=Appeal***

The Intervenors, in their first four points of error, contest the factual and legal sufficiency of the jury=s failure to find easements by implication or estoppel. The burden of establishing the elements of an easement is on the party claiming the easement. *Wilson v. McGuffin*, 749 S.W.2d 606, 609 (Tex. App.CCorpus Christi 1988, writ denied). Since the Intervenors are attacking the failure of the jury to find on issues upon which they had the burden of proof, they must demonstrate that their claims to easements by implication or estoppel were established as a matter of law by the evidence in the trial record. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). This is a difficult burden; essentially, the Intervenors must demonstrate, with regard to these discrete issues, that they established all vital facts in support of the issues so conclusively that they were entitled to judgment as a matter of law. *See id.*

The Intervenors= first and second points of error relate to easements by implication. The elements of an easement by implication are as follows: (1) unity of ownership between the dominant and servient estates; (2) apparent use of the easement at the time the dominant estate was granted; (3) continuous use of the easement, so that the parties must have intended its use to pass by grant with the dominant estate; and (4) reasonable necessity of the easement to the use and enjoyment of the dominant estate. *Bickler v. Bickler*, 403 S.W.2d 354, 357 (Tex. 1966). Whether these requirements have been

**9**

met is to be determined as of the time of severance. *Holden v. Weidenfeller*, 929 S.W.2d 124, 129 (Tex. App.CSan Antonio 1996, writ denied).

The relevant time of severance in this case is when each Intervenor or its predecessor-in-interest originally purchased property from the Drapers in the 1940s. The parties agree that unity of ownership has been established, but they dispute the remaining three elements of an easement by implication. The Intervenors presented evidence at trial as to the apparent and continuous use of the park, but Vinson, in his testimony, denied that the area was in use as a park at the time of severance. Further, none of the testimony of the Intervenors or their fact witnesses regarding the historic use of the park by property owners claimed use of the park back to the time of severance. The Intervenors=assertion of the remaining element of an easement by implication, reasonable necessity, is based on the fact that their lots do not front on Lake Travis. They argue that access to the park for boating and other recreational purposes is therefore reasonably necessary for the use and enjoyment of their lots. However, the deeds of the Intervenors, presented at trial, contain express grants of easement to use other areas of the subdivision with lake frontage, namely the AEast beach@ or the AWest beach.@ Given the evidence controverting the Intervenors=claims, we cannot say that they have conclusively established all of the elements of easements by implication so as to entitle them to judgment on this issue as a matter of law. The Intervenors=first and second points of error are overruled.

The Intervenors= third and fourth points of error relate to easements by estoppel. The doctrine of easement by estoppel holds that the owner of the alleged servient estate may be estoped from denying the existence of an easement by making representations that have been acted upon by the owner of

**10**

the alleged dominant estate. *See Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 209 (Tex. 1962). The elements necessary to create an easement by estoppel are as follows: (1) a representation was communicated, either by word or action, to the promisee; (2) the communication was believed; and (3) the promisee relied on the communication. *Storms v. Tuck*, 579 S.W.2d 447, 452 (Tex. 1979). These elements apply at the time the communication creating the alleged easement is made. *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.*, 750 S.W.2d 868, 872 (Tex. App.CAustin 1988, writ denied). An easement by estoppel, once created, is binding upon successors in title if reliance upon the existence of the easement continues. *See Shipp v. Stoker*, 923 S.W.2d 100, 102 (Tex. App.CTexarkana 1996, writ denied). However, no easement by estoppel may be imposed against a subsequent purchaser for value who has no notice, actual or constructive, of the easement claimed. *Lakeside*, 750 S.W.2d at 873.

The jury, in determining whether the Intervenors possess easements by estoppel, was charged with finding an easement by estoppel if:

(a) Pa Draper=s statements, actions, and inactions established that he intended the G. A. Draper Subdivision Property Owners to have the use of the land as a park;

(b) The G. A. Draper Subdivision Property Owners relied upon Pa Draper=s intention (1) in purchasing their lots or (2) improving their lots; and

(c) G. L. Vinson knew of Pa Draper=s intention before G. L. Vinson purchased the land from Pa Draper.

The Intervenors presented evidence in support of all three of these elements, but Vinson presented evidence disputing whether the property owners relied on Draper=s intention, and whether Vinson had notice of Draper=s intention before he purchased Draper=s land. Given the evidence disputing the Intervenors=claims,

**11**

we cannot say that they have so conclusively established all of the elements of easements by estoppel as to entitle them to judgment on this issue as a matter of law. The Intervenors= third and fourth points of error are overruled.

The Intervenors= fifth, sixth, and seventh points of error relate to the trial court=s conclusions of law concerning construction of the Will. Conclusions of law may not be reversed unless they are erroneous as a matter of law. *Westech Eng=g, Inc. v. Clearwater Constructors Inc.*, 835 S.W.2d 190, 196 (Tex. App.C Austin 1992, no writ). We are not bound by the trial court=s conclusions, but its conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *See id.* Incorrect conclusions of law will not require reversal if the controlling findings of facts will support a correct legal theory. *Valencia v. Garza*, 765 S.W.2d 893, 898 (Tex. App.C San Antonio 1989, no writ).

The trial court=s declarations of law were based on its interpretation of paragraphs 7 and 8 of the Will. Paragraph 7 contains a general grant of authority in Draper=s executor.

> I expressly authorize and empower my Executor to sell or otherwise dispose of all or part of my estate, *including all of my lands and real estate* whether or not included in the subdivision provided in Paragraph 8 hereof, but he shall not be required to sell any of my lands unless he deems it necessary or advisable.

(Emphasis added.) This paragraph authorizes the executor to sell all of Draper=s real estate, including the lots in Draper=s Cove that remained unsold at the time of Draper=s death. Paragraph 8 of the Will states, in relevant part:

I do authorize, empower, and direct my Executor herein above named to do whatever is necessary or appropriate to the completion of such subdivision [Draper=s Cove], and without limiting the foregoing general grant of power by implication, I expressly authorize him to do the following:

(a) To set aside park or community use areas for the benefit of owners of lots in said subdivision already sold by me . . . .

The trial court found that the executor exercised the authority granted in paragraph 7 and sold all of the land in Draper=s Cove to Vinson. However, the trial court declared that the executor did not exercise any of the authority granted in paragraph 8. The court further declared that paragraph 8 did not create or set aside park or community use areas, nor did it grant any property rights or easements. The Intervenors challenge the court=s findings and assert that paragraph 8 must be read as an independent grant of authority *requiring* the executor to create a park. The Intervenors contend that the word Adirect@ in paragraph 8 operates as a mandate to the executor. Essentially, the Intervenors argue that the Will should be read such that paragraph 8 trumps paragraph 7 and the executor is prohibited from selling the subdivision before completing it.

In interpreting a will, the proper function of the judiciary is to construe it according to the intention of the testator as disclosed by the language used. *Engelke v. Schultze*, 275 S.W.2d 158, 159 (Tex. Civ. App.CSan Antonio 1954, writ dism=d w.o.j.). Where its language is free from doubt, a will is construed according to its legal import. *Casey v. Kelley*, 185 S.W.2d 492, 493 (Tex. Civ. App.CSan Antonio 1945, writ ref=d). Words of common use are given their plain and ordinary meaning in the construction of a will, unless it appears from the context that they were used in a different sense. *Avis v. First Nat=l Bank*, 174 S.W.2d 255, 258 (Tex. 1943).

The Will expressly authorizes the executor to sell all of Draper=s lands and real estate. The executor, according to the language in paragraph 7, is given broad power to sell Draper=s real property if the executor finds a sale to be advisable. Paragraph 7 specifically includes Draper=s remaining real estate in Draper=s Cove as lands that may be included in a disposition of Draper=s property. On the other hand, the word Adirect@ in paragraph 8 is the third word in a series of words that carries the connotation of authorize rather than command, *i.e.*, authorize, empower and direct. In addition, the clause of paragraph 8 that expressly grants authority Ato set aside park or community use areas@ specifically uses the word *authorize* and not direct. Therefore, we conclude that the word Adirect@ in paragraph 8 is used more in the sense of authorize and empower and less in the sense of command.

Finally, in reading the two paragraphs together, we do not regard paragraph 8 as a limitation on the broad grant of authority to sell contained in paragraph 7. To determine this issue favorably to the Intervenors, we would have to construe the Will to state that the executor could only sell the subdivision after its completion. We regard this interpretation as strained and contrary to the broad powers extended to the executor in the Will. The Intervenors= fifth, sixth, and seventh points of error are overruled.

The Intervenors= eighth and final point of error is that the trial court erred in not granting them an express easement to the park. They assert that if a number of documents relating to the Draper=s Cove area are read together, they support an express easement to use the park by the property owners. The general rule for construing separate instruments or contracts together is that those executed at the same time, for the same purpose and in the course of the same transaction may be considered as one instrument, and may be read and construed together. *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981). However,

**14**

even if the parties executed the instruments at different times, those instruments pertaining to the same transaction may be read together to ascertain the parties= intent. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000). The Intervenors contend that the following instruments should be read and construed together to create an express grant of easement: a 1947 deed from the Lower Colorado River Authority to Draper (conveying land that includes the disputed park area); the Hobbs deed (executed in 1948); the Will (executed in 1973); a 1976 deed (conveying all of Draper=s land to Vinson); and a 1996 deed from Vinson to one of the property owners (conveying an easement to use the park). All of these instruments were executed at different times, for different purposes, and in the course of different transactions, and thus they cannot be considered as one instrument to be read and construed together. Therefore, we conclude that the trial court did not err in refusing to grant the Intervenors an express easement to the park. The Intervenors= eighth point of error is overruled.

## CONCLUSION

For the reasons discussed above, we overrule all points of error presented in the appeal and cross-appeal in this case. The trial court properly declared that the Browns have an express easement to use the park. Additionally, the trial court=s judgment concerning the Intervenors= points was proper in all respects. Therefore, we affirm the judgment of the trial court.

Mack Kidd, Justice

**15**

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   June 13, 2002

Publish