# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00096-CV

**Fred O. Placke, Jr.; John L. Placke; William M. Placke; Placke & Co., Inc.; Dorothy Placke and Sue Placke, Appellants**

**v.**

**Lee-Fayette Counties W.C.I.D. #1 a/k/a Lee-Fayette Counties Cummins Creek Water Control and Improvement District #1, Appellee**

## FROM THE DISTRICT COURT OF LEE COUNTY, 335TH JUDICIAL DISTRICT NO. 11-341, HONORABLE DEBORAH OAKES EVANS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This suit concerns the validity and extent of an easement designating a flood zone on private property as part of a flood-control project. Appellants Fred O. Placke, Jr., John L. Placke, William M. Placke, Placke & Co., Inc., Dorothy Placke and Sue Placke sued to have declared void the easement made in favor of appellee Lee-Fayette Counties W.C.I.D. #1 a/k/a Lee-Fayette Counties Cummins Creek Water Control and Improvement District #1 ("the District"). The Plackes alternatively sought to have the boundaries of the easement defined at specified elevations, one of which was the elevation at which the Plackes alleged that the District had abandoned the easement. The District sought a declaration that the easement was valid and covered lands up to the elevation of the top of the dam. The District requested that the court adopt a metes and bounds description of the easement setting the easement's boundary along a contour line even with the top of the dam.

The district court granted the District's motion for summary judgment, declared the easement valid and not abandoned, and adopted the survey delineating the boundary of the easement as the elevation even with the top of the District's flood-control dam.

On appeal, the Plackes contend that the court erred by granting summary judgment because the District failed to establish as a matter of law the absence of ambiguity in the easement, the elevation level of the easement, a lack of abandonment above a lower elevation, or the existence of a prescriptive easement. We affirm the judgment in part, reverse the judgment in part, and remand the cause for further proceedings.

**BACKGROUND**

On November 24, 1956, Fred O. Placke and Bertha Placke executed an easement favoring the District. Fred O. Placke was the District's president at the time. The easement covered five tracts of land, which are collectively the Placke farm. The easement ceded to the District the right to inundate a portion of the Placke farm when needed for flood-control purposes. It granted the District

> the right, privilege and authority to use said land for the installation, operation, maintenance and inspection of the following described works and measures, and for the storage of waters that may be impounded by any dam or other reservoir structure described below: Flood water retarding structure; portion of the sediment and flood water detention pools; maximum water coverage approximately 277 surface acres; cleaning sediment pool area of trees and brush, selecting fill material from sediment pool if needed.

Appellants are the successors-in-title to Fred and Bertha Placke on the Placke farm. Similar easements were granted to the District by surrounding landowners.

2

The dam was completed in 1958 downstream from the Placke farm. The elevation of the top of the dam is 449.9 feet above mean sea level.[1] The elevation of the emergency spillway is 445.5 ft. The level of a 100-year flood is 445.8 ft, and the 500-year flood level is 446.8 ft. During the existence of the dam, the waters of the creek have risen only to 444 ft—below the level of the emergency spillway and the 100-year flood.

In 1973, the District expressly released the easement on adjacent property above the elevation of 447 ft. In 1998, the Plackes sought a similar partial release of the easement on the Placke farm, but the District declined.

The Plackes sued, complaining that the lack of certainty regarding the location of the easement restricts their use and enjoyment of the Placke farm. They sought to have the easement declared void because it violated the statute-of-frauds requirement that easements describe with certainty their location. They argued that the existence of the dam without a valid easement caused them irreparable harm and sought damage for the unauthorized impoundment of water on their land. Alternatively, they sought to have the easement defined along a line encompassing 176 acres as described in a sketch created at or near the creation of the easement; the sketch indicates that 176 acres of the Placke farm are below 445 ft—the elevation of the detention pond. (The sketch also shows the acreage below the elevations of the sediment pool (2 acres below 435.7 ft) and the sediment reserve pool (3 acres below 436.5 ft)). Alternatively, the Plackes sought to have the court declare that the District had abandoned any easement on land above 447 ft by releasing a similar easement on neighboring property above the same elevation.

---

[1] For convenience, we will refer to elevation in feet above mean sea level as "ft."

The District denied that the easement's description was inadequate, and asserted that the general description sufficed until the dam was built. The District asserted that the building of the dam, which was the reason for obtaining the flooding easement, fixed the boundary of the easement at the elevation of the top of the dam. Alternatively, the District contended that it had obtained an easement by prescription and that the Plackes were estopped from claiming any other easement boundary line. The District counterclaimed for a declaration that the easement is fixed at the elevation of the top of the dam, which is 449.9 ft.

Both parties moved for summary judgment. The Plackes moved for a partial summary judgment that the easement was void and that the District did not have the right to impound water on the Placke farm pursuant to the easement. The District moved for summary judgment, urging that the easement did not fail but was a "blanket" easement, that the District had acquired a prescriptive easement through its forty-year use of the easement by virtue of the dam's construction even though floodwaters had not reached the top of the dam, and that the Plackes were estopped to deny the easement.

The district court granted summary judgment to the District. In its final judgment, the court concluded that the easement was valid and not void, that it was not limited to 176 acres, and that the District did not abandon its easement. The court declared that the easement covered the 292.9 acres that fell below the elevation of the top of the District's dam, and established the boundary at the metes and bounds description of such property contained in a survey the District prepared (based on the contour line even with the top of the dam).

4

## DISCUSSION

The Plackes contend that the district court made procedural and substantive errors in granting the District's motion for summary judgment. They contend that the easement description was ambiguous and created a question of fact that should have prevented a summary judgment. They also contend that the evidence does not establish as a matter of law that the parties intended that the top of the dam would define the elevation of the boundaries of the easement. Their remaining issues concern the abandonment issue. Their chief argument on that issue is that the court should not have granted summary judgment against their affirmative plea of abandonment of the lands above 447 ft because the District's motion failed to address this plea; they further argue that the District failed to show any injury from limiting the easement to 447 ft and failed to show as a matter of law entitlement to prescriptive easement at a higher elevation.

### Standard of review

We review *de novo* the district court's grant of a motion for summary judgment. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). When reviewing a motion for summary judgment, we take the nonmovant's evidence as true, indulge every reasonable inference in favor of the nonmovant, and resolve all doubts in favor of the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). Under Texas Rule of Civil Procedure 166a(c), the moving party bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). We affirm the summary judgment if any of the theories presented to the trial court and preserved for

5

appellate review are meritorious. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996).

When the opposing sides in a case both move for summary judgment and one motion is granted and the other denied, the appellate court should determine all questions presented and may reverse the trial court judgment and render such judgment as the trial court should have rendered, including rendering judgment for the other movant. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).

**Validity of the easement**

The District asserted three theories by which it acquired an easement from the Plackes: by express agreement, by estoppel, or by prescription. Because the district court did not specify on which grounds it found the easement, we must explore whether the record supports finding the easement valid as a matter of law under any of these theories.

*Express easement*

The statute of frauds and statute of conveyances require that agreements to convey land or an interest in land be in writing. Tex. Bus. & Com. Code Ann. § 26.01 (West 2002); Tex. Prop. Code Ann. § 5.021 (West 2004). An express easement is an interest in land to which the statute of frauds applies. *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983); *West Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 264 (Tex. App.—Austin 2002, no pet.). If an easement does not sufficiently describe the interest conveyed, the conveyance is void. *Pick*, 659 S.W.2d at 637; *Erdeljac*, 94 S.W.3d at 264. As long as the tract of land that will be burdened by an express

6

easement is sufficiently identified, however, an exact designation of location of the easement is unnecessary. *See Vinson v. Brown*, 80 S.W.3d 221, 227 (Tex. App.—Austin 2002, no pet.).

The fact that the precise dimensions of an easement are uncertain does not authorize the court to ignore the right granted if the easement is susceptible to a reasonable construction as to its true intent and meaning. *Id.*; *see also Erdeljac*, 94 S.W.3d at 264. General language specifying a purpose for the easement without defining its precise parameters has been held sufficient to confer an easement. *See Houston Pipe Line Co. v. Dwyer*, 374 S.W.2d 662, 663 (Tex. 1964) ("right of way to lay, maintain, operate, repair and remove a Pipe Line for the transportation of gas"); *see also Vinson*, 80 S.W.3d at 225 (use as "a park located about five hundred (500) feet East of Block No. One (1) of a subdivision . . . which park extends to a cove on the Lake and the boundaries of which park to be marked and established by said G.A. Draper."); *Adams v. Norsworthy Ranch, Ltd.*, 975 S.W.2d 424, 428 (Tex. App.—Austin 1998, no pet.) ("easement of passing in and along a certain way or road . . . across all of said [Norsworthy] Ranch . . . along the route or routes that will render the land [of Adamses] . . . most conveniently accessible to the Austin and Hamilton Pool road"). The undefined boundaries of an easement granted for a specific purpose can become fixed by the use of land for the prescribed purpose with the consent or acquiescence of the property owner. *See Dwyer*, 374 S.W.2d at 666; *Vinson*, 80 S.W.3d at 227-28; *Adams*, 975 S.W.2d at 428. In *Dwyer*, the supreme court reviewed a pipeline easement that did not describe its dimensions by metes and bounds or even give a course or direction for the pipe. *Dwyer*, 374 S.W.2d at 663. The supreme court held that the pipeline company's right to the easement nevertheless became fixed and certain when the company constructed the pipeline with the consent and acquiescence of the landowner.

7

*Id*. at 666. Courts have found similar fixation of the boundaries of an easement based on the use of the land for the purpose specified by the easement. *See Vinson*, 80 S.W.3d at 227-28; *Adams*, 975 S.W.2d at 428.

The express easement in this case does not define the exact parameters of the portion of the Placke farm subject to the easement, but provides the means by which they may be found. The language of the express easement undisputedly identifies the boundaries of the property on which the easement is granted, establishes the flood-control purpose for the easement, and estimates that 277 acres will be covered. In a supplemental response to the District's motion for summary judgment, the Plackes state that they "do not deny that [the District] has an easement. The nature of and scope of the easement are in dispute."

Because the easement identifies the parcel on which the easement impinges and describes the use of the property that will define the boundaries of the easement, it provided the means at the time of drafting the easement for finding the boundaries of the easement based on that use. This description therefore satisfies the statute of frauds and renders the easement valid and not void. *See Vinson*, 80 S.W.3d at 227-28.

But the determination that the express easement validly permitted the use of the property to define the boundaries of the easement does not establish the boundaries of the easement as a matter of law. When an express easement is described in general terms without specifying its location, the right to select the location usually belongs to the grantor. *Id*. at 228. But this right must be exercised in a reasonable manner and, if the grantor of an easement fails to establish its location,

8

the grantee may do so. *Id*. The grantee's use of the easement, with the consent or acquiescence of the grantor, is sufficient to establish the easement's location. *Id*.

The issue at hand is whether the District showed conclusively that the Plackes acquiesced or consented to impoundment of floodwaters even with the top of the dam. Land set aside for potential flooding is not as tangibly or visibly used as land that is used for a road, the path of a pipeline, or a park; that is, the dimensions of a road, pipeline, or a park are more obvious and clearly defined than the dimensions of the land over which floodwaters might be—but have never been—impounded by a structure downstream. *See Dwyer*, 374 S.W.2d at 666 (pipeline)*; Vinson*, 80 S.W.3d at 227-28 (park); *Adams*, 975 S.W.2d at 428 (road).[2] The District argues that all lands below the top of the 449.9-ft dam could be inundated and are thus being used as a buffer for potential floodwater retention.[3] The Plackes argue for lower levels, based on the highest flood on record (444 ft), the height of the detention pond (445 ft), the height of the emergency spillway (445.5 ft), and flood-plain elevations (445.8 for a 100-year flood and 446.8 for a 500-year flood). We must review

---

[2] In these cases, the location of the easements were decided at trials on the merits. *See Houston Pipe Line Co. v. Dwyer*, 374 S.W.2d 662, 666 (Tex. 1964) (reversing summary judgment and remanding for trial); *Vinson v. Brown*, 80 S.W.3d 221, 227 (Tex. App.—Austin 2002, no pet.) (although court decided some issues as matter of law); *Adams v. Norsworthy Ranch, Ltd.*, 975 S.W.2d 424, 427 (Tex. App.—Austin 1998, no pet.) (bench trial); *see also Vrabel v. Donahoe Creek Watershed Authority*, 545 S.W.2d 53, 54 (Tex. Civ. App.—Austin 1976, no writ) (decided validity of easement by partial summary judgment, held trial on location of easement).

[3] The construction of the dam distinguishes this case from the *Vrabel* case, in which this Court found void the grant of an easement over a similarly undifferentiated 111-acre portion of a 250-acre tract. *Vrabel*, 545 S.W.2d at 54. Unlike the dam in this case that was completed relatively soon after the easement was granted, the dam in *Vrabel* was not built during the time required by the easement; the *Vrabel* opinion, when read with documents filed in that case and included as exhibits in this record, reveals that the court was not persuaded by the contention that an easement boundary could be found based on the proposed height of the unbuilt dam. *See id*.

9

whether the record demonstrates as a matter of law, not just the potential level of inundation, but the level of inundation to which the Plackes consented or acquiesced.

The Plackes do not dispute the height of the dam but whether the top of the dam is the relevant elevation for the flood-control easement. They rely on the absence of an expressed intention that the top of the dam set the elevation of the easement, the size of the original area described, the absence of use of the property to store floodwaters, a letter from a state official, a regulatory manual, flood data, and the District's release of an easement on adjacent property.

Although the construction of the dam may have fixed the maximum height of floodwaters that can be impounded by the dam on the Placke farm, it did not fix, as a matter of law, the easement at the height of the top of the dam. There is evidence regarding possible elevations for the easement, but nothing conclusive. The record lacks direct evidence of what the Plackes understood or accepted regarding the level at which the dam would hold back floodwaters—whether it was limited to the emergency spillway, reached the top of the dam, or was some other level. The District built the dam while Placke was president of the District and the dam is visible from a distance, but actions by the parties relatively contemporaneous to the grant of the easement and construction of the dam are inconclusive. Relying on the height of the District's dam would subject 292 acres to the easement, while the map showing the inundation at the level of the detention pond covers 176 acres; neither is equal to the "approximately" 277 acres estimated in the easement. Floodwaters have been impounded by the dam only up to 444 ft on the Placke farm; the Placke farm has never been inundated to the emergency spillway, much less to the top of the dam. But the purpose of the dam has always been to impound floodwaters, not to create a constant reservoir. The

10

District's 1973 release of easements on adjacent land above the 447-ft level is some evidence that the easement may have been higher on those lands, but this is not conclusive evidence of what the original level was on those lands or what the level was originally or is now on the Placke farm. The 1998 letter from state conservationist John Burt discussing various possible levels at which the District should retain the easement is similarly inconclusive; it does not establish as a matter of law the top of the dam (or any other level) as the existing level for the easement, although he does strongly indicate that he believes the easement covers at least up to 447 ft. The Plackes quote from the National Watershed Manual's provision that the state conservationist will require an easement to the crest of the emergency spillway or the 100-year flood; however, this provision does not prohibit the conservationist from obtaining a higher easement. While a fact-finder at trial might determine that the Plackes acquiesced to inundation up to the top of the dam, the evidence does not show the absence of a genuine issue of material fact regarding the level of the express easement established by the District's use and the Placke's acquiescence to that use.

### Easement by estoppel or prescription

The summary judgment that an easement exists similarly cannot stand on the theories of easement by estoppel or prescription because the evidence does not establish the absence of genuine issues of material fact on essential elements of these theories.

The doctrine of easement by estoppel holds that the owner of the alleged servient estate may be estopped from denying the existence of an easement by making representations that have been acted upon by the owner of the alleged dominant estate. *See Vinson*, 80 S.W.3d at 229. The elements necessary to create an easement by estoppel are as follows: (1) a representation was

11

communicated, either by word or action, to the promisee; (2) the communication was believed; and (3) the promisee relied on the communication. *Storms v. Tuck*, 579 S.W.2d 447, 452 (Tex.1979). These elements apply at the time the communication creating the alleged easement is made. *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.*, 750 S.W.2d 868, 872 (Tex. App.—Austin 1988, writ denied). But the record lacks conclusive proof that the Plackes represented to the District that they were granting an easement to the top of the dam. Even assuming that the dam is visible and the total height was known, there is no definitive showing that the Plackes understood, when granting the easement, that floodwaters would rise to the top of the to-be-built dam and not just up to the emergency spillway or somewhere in between the spillway and the dam height. Without conclusive proof of a representation by the Plackes to the District regarding the height of the easement, summary judgment on this basis is inappropriate.

The record similarly does not show the District entitled to summary judgment on a prescriptive easement of lands up to the top of the dam. A person acquires a prescriptive easement by the open, notorious, continuous, exclusive, and adverse use of someone else's land for ten years. *Mack v. Landry*, 22 S.W.3d 524, 531 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Stallman v. Newman*, 9 S.W.3d 243, 248 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). The owner of the property must have notice of the adverse claim. *Schultz v. Shatto*, 237 S.W.2d 609, 614 (Tex. 1951); *see also Stallman*, 9 S.W.3d at 243. Although the height of the dam has been apparent for more than ten years, the record does not show that the District openly and notoriously claimed the right to retain floodwaters up to the level of the top of the dam or that the Plackes had notice of this claim. This is not like a case in which a road has been used and maintained by the public across land

12

for more than fifty years.  *See Schultz*, 237 S.W.2d at 612-14.  Here, the use shown is merely the potential for inundation by impoundment of floodwaters; the record does not clearly show to what level of inundation the building of the dam provides notice.  Actual inundation by floodwaters has only occurred up to 444 ft.  There are genuine issues of material fact concerning the openness, notoriousness, and adversity of the District's possession of the easement it claims up to the top of the dam.

We conclude that, although the evidence is adequate to support summary judgment that the express easement was validly granted, the evidence adduced in the summary judgment proceeding does not support a finding of a particular elevation at which the building and maintenance of the dam established the easement.  The district court did not err by concluding that the easement was valid, and therefore did not err by denying the Plackes' contrary motion.  The district court erred by granting summary judgment that the easement is not limited to 176 acres and that it covers the 292.9 acres that fall below the elevation of the top of the dam.

**Abandonment**

The Plackes contend by their third issue that the district court erred by granting summary judgment against their claim that the District abandoned the easement on the Placke farm for elevations above 447 ft.  The Plackes assert that the judgment is erroneous because the District failed to address the abandonment issue in its summary judgment motion.  A summary judgment cannot be granted or affirmed on grounds not expressly set out in the motion or response.  *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993); *see also* Tex. R. Civ. P. 166a(c) ("The motion for summary judgment shall state the specific grounds therefor.").

13

The District replies that it did not have the burden to disprove abandonment because the Plackes' plea of abandonment was an affirmative defense. Ordinarily, to gain summary judgment against a nonmovant's claims for relief, a summary-judgment movant must disprove at least one element of the nonmovant's claims as a matter of law. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex. 1996); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). But the burdens are different regarding a nonmovant's affirmative defense. Once a movant establishes its right to summary judgment as a matter of law on its claims, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact regarding its affirmative defense; a mere pleading of an affirmative defense will not avert summary judgment. *KPMG Peat Marwick v. Harrison County Housing Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Parker v. Dodge*, 98 S.W.3d 297, 300 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Wilson v. Gen. Motors Acceptance Corp.*, 897 S.W.2d 818, 823 (Tex. App.—Houston [1st Dist.] 1994, no writ). Abandonment is ordinarily an affirmative defense, although it is not expressly listed among the affirmative defenses in Texas Rule of Civil Procedure 94. *See San Jacinto Sand Co. v. Southwestern Bell Tel. Co.*, 426 S.W.2d 338, 344 (Tex. Civ. App.—Houston 1968, writ ref'd n.r.e.).

The critical procedural fact is that the Plackes pled abandonment as part of their request that the court declare that the District's abandonment of the easement above 447 ft set the easement's elevation at 447 ft. It is their fourth cause of action in their first amended petition, not part of their answer to the District's counterclaim for declaratory relief. Thus, in this case, abandonment is part of a claim for declaratory relief, not merely an affirmative defense. The

14

District, as the defendant, therefore had the burden to disprove in its summary-judgment motion at least one element of the Plackes' abandonment claim. *See Friendswood*, 926 S.W.2d at 282. But the District's motion does not mention the Plackes' claim that the District abandoned its easement above 447 ft by releasing easements above that elevation on adjacent property. The closest the District comes is arguing that its construction of the dam gives it an easement by prescription by virtue of forty-plus years of use; but that does not address the effect of the partial release of easements on adjacent property. The Plackes reiterated their abandonment claim in their response to the District's motion for summary judgment. The district court expressly granted summary judgment that the District did not abandon its easement.

Because the District's motion failed to address the Plackes' claim for a declaration that the District abandoned the easement by partially releasing the easement on adjacent property, we must reverse the district court's grant of summary judgment against that claim without evaluating the evidentiary underpinnings of that judgment. *See Stiles*, 867 S.W.2d at 26; *see also* Tex. R. Civ. P. 166a(c).

## CONCLUSION

Although the District received a valid express easement over the Placke farm despite the absence of language defining the precise dimensions of the easement, permissibly leaving future actions to determine the precise boundaries, we conclude that the evidence here does not establish as a matter of law those dimensions in this case. Accordingly, the district court did not err by awarding summary judgment that the easement is valid and not void. The record, however, contains evidence revealing genuine issues of material fact concerning the elevation at which the parties'

conduct subsequently set the easement; accordingly, the district court erred by granting summary judgment that the easement was not limited to 176 acres and that it included all lands below the level of the top of the dam. We further conclude that the district court erred by granting summary judgment that the District did not abandon any easement on lands above 447 ft because the District did not include a request for such in its motion for summary judgment.

Accordingly, we affirm that part of the judgment finding that the District received a valid easement, but reverse the judgment in all other respects. We remand this cause for further proceedings.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed in Part; Reversed and Remanded in Part

Filed: May 5, 2005