**TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN**

**NO. 03-18-00707-CV**

**Ali Mahrou, Appellant**

**v.**

**Weeton Properties, LLC Series B, Appellee**

**FROM THE 33RD DISTRICT COURT OF BLANCO COUNTY
NO. CV-08515, THE HONORABLE J. ALLAN GARRETT, JUDGE PRESIDING**

**M E M O R A N D U M   O P I N I O N**

Ali Mahrou filed this interlocutory appeal from the trial court's order issuing a temporary injunction restricting his use of a recreational easement on certain real property owned by Weeton Properties, LLC Series B (Weeton). *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(4) (providing for appeal from interlocutory order granting or refusing temporary injunction). We will vacate the trial court's temporary-injunction order.

**BACKGROUND**

The dispute in this case concerns the validity and scope of a recreational easement (Easement) affecting real property (the Property) in Blanco County. In August 2018, Weeton[1] sued Mahrou seeking temporary and permanent injunctive relief, declaratory relief, and damages for trespass to the Property. Weeton is the successor in title to the Property, previously owned

---

[1] The two members of Weeton Properties, LLC Series B are Gavin and Christel Loftus, husband and wife. Because the Loftuses share a surname, we will refer to them by their first names.

by Reba Byrd, as Trustee of the Reba Byrd Trust Dated September 9, 2007 and as Trustee of the Byrd Trust II Dated September 9, 2007 (collectively, Byrd). Weeton purchased the Property from Byrd in January 2018.

The Property was the subject of a prior lawsuit during Byrd's ownership. In 2013, Byrd sued Mahrou and his wife, Gypsie Mahrou, seeking declaratory relief regarding the applicability of deed restrictions to the Mahrous' tract of land in the Byrd Ranch Estates subdivision. The Mahrous counterclaimed seeking recognition of a recreational easement on Byrd's land to access and use Miller Creek. *See Byrd v. Mahrou*, No. 03-14-00441-CV, 2016 WL 3974702, at *1 (Tex. App.—Austin July 22, 2016, pet. denied) (mem. op.) (summarizing factual background).

The trial court in the prior lawsuit rendered a final judgment (Final Judgment) holding, in part:

> It is ORDERED, ADJUDGED and DECLARED the [Mahrous], their guests and subsequent owners of Tracts 17 and 18, located in Section 2 of the Byrd Ranch Estates shall have the right of ingress, egress and recreational use of that land owned by Plaintiffs Reba Byrd, Individually or as Trustee of the Reba Byrd Trust generally located at the entrance to the Byrd Ranch Estates/Byrd Ranch at Miller Creek Cemetery Road and contiguous to and abutting Miller Creek and the Miller Creek Dam located at said entrance to the Byrd Ranch Estates. The Court further[] Orders a permanent injunction shall issue prohibiting Plaintiffs Reba A. Byrd individually and as Trustee or the Reba Byrd Trust, or those acting under their direction or in concert with same, from interfering in any way with [the Mahrous], their guests and subsequent owners of Tracts 17 and 18, located in Section 2 of the Byrd Ranch Estates use and enjoyment of their right of ingress, egress and recreational use of this property.

Both Byrd and the Mahrous[2] appealed the Final Judgment to this Court, and we affirmed. *See id.* The Final Judgment was recorded in the Blanco County deed records in January 2015.

---

[2] The Mahrous also sought a declaration that the southernmost portion of the original ranch owned by Byrd, which Byrd retained when she developed the northern portion of the ranch

2

In the present lawsuit, Weeton pleaded for a declaration that the Easement established in the Final Judgment "did not run with the land upon [Weeton]'s acquisition of the Property." After an evidentiary hearing, the trial court rendered a Temporary Injunction Order (TI Order) on October 9, 2018, finding that "there are justiciable claims by both parties with regard to the easement, and that a temporary order be entered during the pendency of this matter." The TI Order further provided

> IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED, that during the pendency of this lawsuit, and until a final judgment is entered with respect thereto, [Mahrou] shall have temporary access to the Easement beginning at the gate located at the Entrance and extending thirty (30) yards west of the Entrance. This area includes an extension into the water of Miller Creek perpendicular from said linear 30 yards of land.
>
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that, except as provided in the preceding paragraph, [Mahrou] shall not have access to any other portion of any property owned by Plaintiffs.
>
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that [Mahrou]'s activities upon the Easement shall be strictly limited to swimming and/or fishing. Under no circumstances shall [Mahrou] be entitled to navigate or utilize any boat, craft, or other flotation device on any portion of the water in the Easement beyond the 30 yard extension.
>
> IT IS FURTHER ORDERED, ADJUDGED, and DECREED that that [Mahrou]'s access to the Easement shall be strictly limited in time to the hours of 9:00 a.m. to 6:00 p.m.
>
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that the attached hold harmless agreement as to [Mahrou]'s use of the Property be executed by the parties as soon as practical. In any event, [Mahrou] shall execute and provide executed copy of such hold harmless agreement to Weeton Properties, LLC prior to use and enjoyment of the Easement.
>
> IT IS FURTHER ORDERED, ADJUGED, AND DECREED, that to facilitate [Mahrou]'s access to the Easement, [Mahrou] shall provide its own chain and lock to be placed upon the gate located at the Entrance. The chain shall be

into the Byrd Ranch Estates, was burdened by a residential-use-only deed restriction. The trial court found against the Mahrous on this counterclaim.

3

secured by two (2) locks, one of which is accessible by Plaintiff and the other accessible by [Mahrou], giving either party the ability to access the gate.

IT IS FURTHER ORDERED, ADJUGED, AND DECREED, that [Mahrou] shall ensure the gate located at the Entrance remains, at all times, locked, and immediately upon [Mahrou]'s entry upon, or exit from, the Property, shall ensure the gate located at the Entrance is locked.

Mahrou filed this interlocutory appeal of the TI Order.[3]

## DISCUSSION

Mahrou contends that the trial court abused its discretion in modifying the Easement to restrict the times and area of his usage and the type of allowable recreation, and in ordering him to execute a hold-harmless agreement prior to use and enjoyment of the Easement. Specifically, he contends that (1) Weeton failed to prove probable, imminent, and irreparable injury and a probable right to relief on its trespass claim; (2) the TI Order is void for failing to satisfy the requirements of Rule of Civil Procedure 683; and (3) the TI Order is void because it violates the Final Judgment establishing an easement that runs with the land.

A temporary injunction is an extraordinary remedy whose purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). At a hearing on an application for a temporary injunction, the only question before the trial court is whether the applicant is entitled to preserve the status quo, pending trial on the merits. *Id.* To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a

---

[3] In a separate appeal, which we concurrently dismiss for want of jurisdiction in a separate opinion and order, Mahrou challenges the trial court's denial of his "Claim of Disobedience" seeking to hold Weeton in contempt for violating the permanent injunction in the Final Judgment. *See Mahrou v. Byrd*, No. 03-19-00028-CV (Tex. App.—Austin May 24, 2019) (mem. op.).

4

probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* We review an order granting a temporary injunction for an abuse of discretion. *Id.*

Mahrou specifically contends that "the record is silent" as to any evidence supporting Weeton's allegation that it will incur irreparable harm or injury during the interim of the lawsuit absent issuance of the TI Order. He also contends that there is no evidence of Weeton's probable right to relief on its trespass claim. We agree with Mahrou on this latter point and, therefore, need not consider whether there is evidence of Weeton's alleged irreparable injury.

In its live petition, Weeton alleged that after it purchased the Property, "Mahrou began accessing the [P]roperty for recreational use at a point of entry not authorized by the Final Judgment." Weeton further alleged that, after it "promptly informed [Mahrou] he has no right to access the property at his chosen point of entrance . . . it installed a lock and chain to prevent [Mahrou from further] accessing the Property . . . [but that Mahrou] cut and removed the lock, and has continued to cut and remove subsequent locks."

At the temporary-injunction hearing, Mahrou testified that upon hearing that the Loftuses had purchased the Property, he reached out to Gavin: "to be neighborly, I congratulate[d] him, and also I asked him whether he was aware of my easement to Miller Creek." Mahrou testified that Gavin directed him to speak with his attorney, which Mahrou did. Mahrou further testified that some time after he spoke with Gavin, a fence was erected around the Property with a locked gate at the location where he had been accessing the Property and creek. Mahrou testified that when he spoke with the Loftuses' attorney, Mitch Carthel, the attorney "agreed that there is an easement" and told Mahrou that the fence and locked gate "are to keep others out but not you." After some further communications, Carthel sent Mahrou an

5

email stating that "I think we both agree that the court's judgment is ambiguous at best [and it] appear[s] that we have differences on its meaning, scope and effect." After further attempts to resolve the dispute, Mahrou testified that in late July 2018—being unable to access the Property or the creek because of the locked gate—he cut the chain containing the Loftuses' lock and installed his own lock "that goes around with Mr. Loftus' lock so both of us can have access in and out." He explained that a day or two later, his lock was removed. On later occasions, he installed a second and third lock, which were also removed. "And all of this time Mr. Loftus' lock was left intact."

Gavin testified, confirming that Mahrou had cut the chain several times and placed his own locks on the chain to be able to access the Property. He further testified that he was familiar with ranches that often have "a whole chain of locks because [different people] have a common entry" and that, even with Mahrou's locks on the chain, he could still access the Property himself. Christel testified that she and Gavin were advised by Carthel and another attorney to remove Mahrou's locks, which they did.

Christel further testified that Mahrou's understanding of his access to the Property is "absolutely not our understanding." According to Christel, the Easement grants Mahrou the right to be on the Property only at an area indicated by a "little bitty red semicircle" on a survey prepared for Weeton before closing on the Property. Exhibits admitted at the hearing included the survey with the "red semicircle" and GoogleEarth imagery of the disputed area, on which Mahrou had marked the location of the new fence and locked gate. Significantly, the semicircle is located at a different area—on and near the roadway at the entrance into the Byrd Ranch Estates subdivision—than where the new locked gate is, just adjacent to the creek's bank. No direct access exists between Miller Creek and the red semicircle.

6

Christel testified that the Easement grants Mahrou access to the red semicircle only, which is a small paved area on the backside of a concrete dam. She explained that Mahrou could access the creek from the semicircle if he were "standing throwing a fishing pole from the road" up over the "asphalt and concrete [dam]." Weeton contended that because Mahrou accessed the Property at the new locked gate—where he had traditionally accessed the Property and creek for years—and not at the semicircle the Loftuses' surveyor had delineated, his entry was unauthorized and constituted a trespass.

Christel testified that she and Gavin first learned of Mahrou's recreational-easement claims before they closed on the Property—while "going through the process of buying" it and "through reviewing the documents." She explained that she and Gavin contracted for the survey through their title company because, "[w]e wanted to understand what the actual property survey lines were, and if there was, since we were made aware of, as I mentioned earlier, the—Mr. Mahrou's recreational use, to let us know exactly where that should be on there." She testified that she and Gavin also consulted with their attorney before closing on the Property and obtained his legal opinion about the Easement.

Trespass to real property occurs when a person enters another's land without consent. *Fowler v. Lund*, No. 14-11-00115-CV, 2012 WL 8017138, at *2 (Tex. App.—Houston [14th Dist.] Feb. 16, 2012, no pet.) (mem. op.) (citing *Pharaoh Oil & Gas, Inc. v. Ranchero Esperanza, Ltd.*, 343 S.W.3d 875, 882 (Tex. App.—El Paso 2011, no pet.)). To recover damages for trespass to real property, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property; (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary; and (3) the defendant's trespass caused injury to the plaintiff. *Fowler*, 2012 WL 8017138, at *2. Where a trespass invades the possession of a person's land, or

7

destroys the use and enjoyment of the land, an injunction is a proper remedy. *Savering v. City of Mansfield*, 505 S.W.3d 33, 49 (Tex. App.—Fort Worth 2016, pet. denied).

A party's use of a valid easement within the limitations contained therein does not constitute trespass. *See Doll v. Hurst*, No. 03-02-00576-CV, 2003 WL 21939711, at *9 (Tex. App.—Austin Aug. 14, 2003, pet. denied) (mem. op.) (noting that jury instruction was proper in explaining that owner of easement may use easement to those limits contained in its grant, and such use does not constitute trespass). We therefore consider (1) the legal question of whether the Easement is valid and enforceable against Weeton, *see id.*; *see also Texas Ass'n of Bus. v. City of Austin*, 565 S.W.3d 425, 438 (Tex. App.—Austin 2018, pet filed) (concluding that appellate court must address merits of legal question that is determinative of whether applicant has met probable-right-to-relief requirement and noting that trial court has no discretion to get legal question "wrong"), and (2) whether Weeton has proven its probable right to relief on its trespass claim alleging that Mahrou has no right to access the Property at the new locked gate.

This Court previously affirmed that the Easement is valid and enforceable. *See Byrd*, 2016 WL 3974702, at *8. Specifically, we held that the evidence was factually sufficient to support the trial court's finding that the Mahrous have a recreational easement by estoppel, the essence of such type of easement being that "the owner of a servient estate may be estopped from denying the existence of an easement by making representations that the owner of the dominant estate then relies on." *Id.* (citing *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 209 (Tex. 1962)). "Once created, an easement by estoppel is binding upon the owner of the servient estate and his successors in interest if they had notice—actual or constructive—of the easement claimed." *Robinson v. Riddick*, No. 04-15-00272-CV, 2016 WL 1238166, at *3 (Tex. App.—San Antonio Mar. 30, 2016, no pet.) (mem. op.); *see Goodenberger v. Ellis*, 343 S.W.3d 536,

8

541 (Tex. App.—Dallas 2011, pet. denied) ("Once created, an easement by estoppel is binding upon successors in title if reliance upon the existence of the easement continues. However, an easement by estoppel may not be imposed against a subsequent purchaser for value who has no notice, actual or constructive, of the easement claimed."); *Vinson v. Brown*, 80 S.W.3d 221, 229 (Tex. App.—Austin 2002, no pet.) (same).

The undisputed evidence shows that the Loftuses had both actual and constructive knowledge of the Easement prior to closing. Christel testified that prior to closing, she knew about Mahrou's claim of a recreational easement, had her title company perform a title survey to indicate where the Easement was located on the Property (which the survey delineated with the "red semicircle"), and asked her attorney for an opinion about the Easement's validity. Moreover, Weeton had constructive knowledge of the Easement by virtue of the Final Judgment's recordation in the Blanco County deed records several years before its purchase of the Property. *See* Tex. Prop. Code § 13.002 ("An instrument that is properly recorded in the proper county is: (1) notice to all persons of the existence of the instrument; and (2) subject to inspection by the public."); *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617–18 (Tex. 2007) (noting that recorded instruments in grantee's chain of title constitute irrebuttable presumption of notice); *Musgrave v. Brookhaven Lake Prop. Owners Ass'n*, 990 S.W.2d 386, 396 (Tex. App.—Texarkana 1999, pet. denied) (noting that documents on file in county real-property records constitute constructive knowledge of same). Accordingly, the Easement is enforceable against Weeton as the subsequent purchaser and "runs with the land." *See Vinson*, 80 S.W.3d at 229; *see also Rahmati v. AJBJK, L.L.P.*, No. 01-15-01036-CV, 2017 WL 4820336, at *5 (Tex. App.—Houston [1st Dist.] Oct. 26, 2017, pet. denied) (mem. op.) (defining easement appurtenant as one that "runs with the land," which means that "the benefit of the easement

9

transfers with the title to the dominant estate and the burden of the easement passes with the transfer of title to the servient estate").

Having determined that the Easement is valid and enforceable against Weeton, we turn to a consideration of whether Weeton proved its probable right to relief on its claim that Mahrou trespassed by accessing the Property at the new locked gate. *See Butnaru*, 84 S.W.3d at 204; *183/620 Grp. Joint Venture v. SPF Joint Venture*, 765 S.W.2d 901, 904 (Tex. App.—Austin 1989, writ dism'd w.o.j.) (noting that to prove probable right to relief, party must show that "bona fide issue exists" as to its right to ultimate relief and must adduce evidence that "tends to support" its right to recover on merits). Our review of the Final Judgment's text and the evidence leads us to conclude that no bona fide issue exists as to whether Mahrou's alleged access of the Property violated the Easement's parameters. The Final Judgment grants Mahrou "the right of ingress, egress and recreational use of that land . . . generally located at the entrance to the Byrd Ranch Estates/Byrd Ranch at Miller Creek Cemetery Road *and contiguous to and abutting Miller Creek and the Miller Creek Dam* located at said entrance to the Byrd Ranch Estates." (emphasis added); *see also Byrd*, 2016 WL 3974702, at *4–5 (concluding that Easement contemplates creek access). While the Easement does not grant Mahrou access to the entire Property, we conclude that the area of Mahrou's alleged trespass is located within the parameters of this language, based on the evidence in the record. Specifically, the area near the new locked gate is "contiguous to and abutting Miller Creek and the Miller Creek Dam located at [the] entrance to the Byrd Ranch Estates." Weeton has adduced no evidence tending to support its allegation that Mahrou's alleged access constitutes trespass by exceeding the scope of the Easement. *See 183/620 Grp. Joint Venture*, 765 S.W.2d at 904; *see also Doll*, 2003 WL 21939711, at *9. We conclude that Weeton failed to prove its probable right to relief on its

10

claim that Mahrou trespassed by accessing the Property at the new locked gate. Accordingly, we sustain Mahrou's first issue[4] and hold that the trial court abused its discretion in issuing the TI Order. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Doll*, 2003 WL 21939711, at *9.

## CONCLUSION

Because the trial court abused its discretion in issuing the TI Order, we sustain Mahrou's first issue and vacate the TI Order.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Vacated

Filed: May 24, 2019

---

[4] Because we conclude that the trial court's TI Order was rendered erroneously, we need not consider Mahrou's second and third issues, in which he contends that the order is void. *See* Tex. R. App. P. 47.1, 47.4.

11