LATASTE ENTERPRISES, E. Allan
Stockton, and Mary Lois Buce,
Appellants,

v.

CITY OF ADDISON, Texas, Appellee.

No. 05–02–01547–CV.

Court of Appeals of Texas,
Dallas.

Aug. 21, 2003.

Rehearing Overruled Oct. 8, 2003.

Carl A. Generes, Dallas, for Appellants.

Sim Israeloff, Charles T. Frazier, Jr., Christopher T. Colby, Cowles & Thompson, P.C., Dallas, for Appellee.

Before Justices BRIDGES, O'NEILL, and FITZGERALD.

## OPINION

Opinion By Justice FITZGERALD.

The issue in this case is whether La-Taste Enterprises, E. Allan Stockton, and Mary Lois Buce have easements providing them use of the Addison Airport free of any license or usage fees. The trial court determined they did not and granted the City of Addison's motion for summary judgment. On appeal, appellants assert the trial court erred in granting the City's motion for summary judgment because the City failed to establish as a matter of law that appellants did not have an easement by estoppel, an easement by equity, or an implied easement and appellants presented some evidence that they have an easement. We affirm the trial court's judgment in part and reverse and remand in part.

## BACKGROUND

In October 1956, Addison Airport, Inc. obtained a lease with an option to purchase about 383 acres to construct, own, and operate an airport in Addison, Texas. About 74 acres was not used for the Airport. In 1960, Addison Airport, Inc. and Trammel Crow formed Crow Airport Properties, Ltd. (the Limited Partnership), a limited partnership in which Addison Airport, Inc. was the limited partner and Crow was the general partner, "for the purpose of developing, owning and operating the Property," that is, the 74 acres not used for the Airport, which they called the Addison Airport Industrial District. Addison Airport, Inc.'s contribution to the Limited Partnership was the assignment of the lease for the property constituting the Industrial District. In August 1962, the Limited Partnership exercised the option on the lease and purchased the property constituting the Industrial District. Subsequently, Crow, as general partner of the Limited Partnership, marketed the Industrial District to appellants or their predecessors in interest to the property.

Craig D. LaTaste purchased a lot in the Industrial District from the Limited Partnership in 1967 and purchased the neighboring lot from the man who owned it in 1974. Also in 1974, LaTaste transferred both lots to his family's partnership, appellant LaTaste Enterprises. Stockton purchased a lot in 1969, but the record does not show whether he purchased the lot from the Limited Partnership or from an individual. In 1975, Stockton purchased another lot from its owner. The company owned by Buce and her husband purchased two lots from the Limited Partnership in 1963. Buce's husband later died.[1]

LaTaste stated in his affidavit that he would not have bought the property in the Industrial District if Crow and Addison Airport, Inc. had not told him that if he bought property in the Industrial District, he would have free use of the Airport.[2]

---

1. Buce's affidavit does not explain how, or whether, she came to own the property purchased by her and her husband's company.

2. Paragraphs 4 and 5 of Buce's affidavit and paragraphs 5 and 6 of LaTaste's affidavit assert Crow and Addison Airport, Inc. promised them they would have free use of the Airport if they bought property in the Industrial District. However, the City objected to paragraphs 4 and 5 of Buce's affidavit and paragraph 5 of LaTaste's affidavit, and the trial court sustained those objections. The City did not object to paragraph 6 of LaTaste's affidavit. Thus, after the sustaining of the objections, which are not challenged on appeal, Buce's affidavit contains no evidence of any representation by either Crow or Addison Airport, Inc. while LaTaste's affidavit, in paragraph 6, contains evidence that Crow and Addison Airport, Inc. made a representation to him about free use of the Airport.

Stockton was told by one of his business's customers that property owners in the Addison Industrial District "enjoyed unrestricted and free access to the Airport." Appellants bought tracts in the Industrial District, and they constructed on their property hangars for their airplanes and taxiways leading onto Addison Airport's property. Stockton also made improvements to the Airport's property with the consent and approval of the Airport. Before 1980, appellants taxied their airplanes from their lots in the Industrial District onto the Airport's property and used the taxiways, runways, and public areas free from any request or demand for usage or license fees or license agreements.

In 1976, Addison Airport, Inc. sold the Airport to the City of Addison. In 1980, the City asked appellants to sign a license agreement and pay fees to use the Airport, and the City threatened to block appellants' access to the Airport with a fence if appellants did not agree to sign the license agreement and pay the fees. LaTaste signed the agreement and paid fees for sixteen years through 1996; Buce did not sign the agreement until 1994; but Stockton did not sign or pay the fees (although one of his tenants signed the agreement in 1994), and the City did not block their access to the Airport property.

In 1998, the City again threatened to build a fence blocking appellants' access to the Airport if they did not agree to pay fees to use the Airport. Appellants alleged that Buce signed the license agreement but that LaTaste and Stockton refused. Appellants filed this suit seeking an injunction barring the City from building a fence blocking appellants' access to the Airport. Appellants also sought a declaratory judgment that they have an easement granting them free and unrestricted use of the Airport's taxiways, runways, and public areas. Appellants alleged in their petition that they had easements by estoppel, by implication, and by prescription.[3] The City filed a counterclaim for declaratory judgment, asking the trial court to declare, *inter alia*, that appellants have no easement for free and unrestricted access to the Airport and that any further entry onto the Airport by appellants without a current license agreement is unlawful and constitutes a trespass.

The City moved for summary judgment on June 26, 1998 on the ground that no implied easement existed and on February 16, 2001 on the ground of statute of limitations. The trial court denied these motions, and the case was called for trial. During voir dire of the jury panel, the trial court understood that one of the issues was whether appellants had an easement by estoppel on the Airport property based on the representation of Crow and the Limited Partnership, which did not own the Airport. The trial court dismissed the jury and asked the parties to file motions for summary judgment on the issue. On June 27, 2001, the City filed a new motion for summary judgment on the entire case under both the traditional and no-evidence standards, which the trial court granted, rendering a take-nothing judgment against appellants.

## STANDARD OF REVIEW

The standard for reviewing a summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546,

---

3. On appeal, appellants do not assert any error from the trial court's grant of summary judgment on their claim of easement by prescription. Accordingly, that claim is waived on appeal. *Barnes v. SWS Fin. Servs., Inc.*, 97 S.W.3d 759, 761 (Tex.App.-Dallas 2003, no pet.); *Turner v. Church of Jesus Christ of Latter–Day Saints*, 18 S.W.3d 877, 885 (Tex. App.-Dallas 2000, pet. denied).

548–49 (Tex.1985). A party moving for summary judgment has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972). After the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence creating a fact issue. *Kang v. Hyundai Corp.,* 992 S.W.2d 499, 501 (Tex. App.-Dallas 1999, no pet.).

After adequate time for discovery and without presenting summary judgment evidence, a party is permitted by rule of civil procedure 166a(i) to move for summary judgment on the ground that no evidence supports one or more essential specified elements of an adverse party's claim or defense on which the adverse party would have the burden of proof at trial. *See* TEX.R. CIV. P. 166a(i). If the adverse party is unable to produce summary judgment evidence raising a genuine issue of material fact on the challenged elements, the trial court must grant the motion. *See id.*

## EXTENT OF MOTION FOR SUMMARY JUDGMENT

■ The City argues its June 27, 2001 motion for summary judgment included the statute of limitations as a ground. Appellants did not address this ground in their brief on appeal. Thus, the City argues, appellants have waived this ground on appeal and, because the ground goes to the entire case, we should affirm the summary judgment without addressing the issues appellants raise concerning other grounds for summary judgment. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970); *Simmons v. Healthcare Ctrs. of Tex., Inc.,* 55 S.W.3d 674, 680–81 (Tex.App.-Texarkana 2001, no pet.).

The City's argument that it presented the ground of the defense of statute of limitations in the June 27, 2001 motion for summary judgment is based on the following statement made under the heading *"Summary Judgment Evidence "*:

To the extent that this motion refers to undisputed facts, such evidence was previously filed with one or more of the prior summary judgment motions. Addison incorporates herein by reference its prior motion for summary judgment and supporting materials dated April 5, 1999 (along with its objections to plaintiff's [sic] evidence dated May 17, 1999), its motion for summary judgment on the statute of limitations dated February 16, 2001, and Addison Airport of Texas; Inc.'s Amended Motion for Summary Judgment dated June 26, 1998. Addison also attaches hereto the affidavit of Sim Israeloff on Reasonable Attorney's fees.

This paragraph was followed immediately by the heading, *"Argument and Authorities."* The City never mentioned the statute of limitations under the "Argument and Authorities" heading or in the remainder of the June 27, 2001 motion for summary judgment. Appellants argue that the City made the reference to the February 16, 2001 motion for summary judgment on the statute of limitations for the purpose of informing the trial court where it could find support for the facts set forth in the June 27, 2001 motion and not for the purpose of reasserting the statute of limitations ground. We agree with appellants.

■ The supreme court requires that the grounds for summary judgment be "expressly presented" in the motion for summary judgment itself and not a supplemental document. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 342 (Tex.1993). Nowhere in the City's June 27, 2001 motion for summary judgment does the City "expressly present[ ]" limitations as a ground for that motion for summary judgment. As appellants assert, it is

clear from the context of the reference to the motion for summary judgment on limitations that the City was referring the trial court to the location of the evidence in support of the June 27, 2001 motion and not re-asserting the ground of limitations, which had previously been denied. Accordingly, because limitations was not a ground on which the trial court may have granted summary judgment, appellants did not have to argue limitations on appeal.

## EASEMENT BY ESTOPPEL

 In their first issue, appellants question whether the trial court correctly determined that the City had proven appellants had no easement by estoppel as a matter of law and that appellants had presented no evidence of easement by estoppel.

 An easement is the privilege to use another tract of land for some limited purpose. *Daniel v. Fox*, 917 S.W.2d 106, 110 (Tex.App.-San Antonio 1996, writ denied). The tract of land on which the easement is imposed is the servient estate, and the tract of land benefitted by the easement is the dominant estate. *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207 (Tex.1962). Under the doctrine of easement by estoppel, also called estoppel in pais, the representations of the owner of the alleged servient estate may estop that owner from denying the existence of an easement when those representations have been relied on by the owner of the alleged dominant estate. *Vinson v. Brown*, 80 S.W.3d 221, 229 (Tex.App.-Austin 2002, no pet.). The elements necessary to create an easement by estoppel are: (1) a representation, either by word or action to the promisee; (2) the representation was believed; and (3) the promisee relied on the representation. *Drye*, 364 S.W.2d at 211; *Vinson*, 80 S.W.3d at 229. An easement by estoppel is binding upon successors in title if reliance upon the existence of the easement continues. *Vinson*, 80 S.W.3d at 229.

The City asserted in its motion for summary judgment that there had been no representation to appellants by the owner of the alleged servient estate, the Airport. The City argued that the only representations, if any, were made by Crow or the Limited Partnership. Although Addison Airport, Inc. was a limited partner in the Limited Partnership, the City asserted there is no evidence that Addison Airport, Inc. made a representation to appellants about free use of the Airport. However, LaTaste stated in his affidavit, "I would have not purchased my lots in the Industrial District if I was not promised and delivered free and unlimited Airport access. I would not have spent thousands of dollars building and maintaining hangers [sic] and airplane storage facilities on my lots had I not been assured of, promised and delivered by Crow and AA [Addison Airport, Inc.] free and unlimited access to the Airport." LaTaste's affidavit is some evidence that Addison Airport, Inc. promised him "free and unlimited access to the airport."

Buce cites to her affidavit as evidence of Addison Airport, Inc.'s representation to her and her husband that they would have free use of the Airport. However, the trial court sustained the City's objections to that portion of Buce's affidavit. Buce relies on the statement in her affidavit that "We had free and unrestricted access to the Airport for over 30 years...." However, this statement provides no evidence that Addison Airport, Inc. or its agents represented to Buce that she and her husband could have free use of the Airport. Accordingly, Buce has no evidence of any representation by Addison Airport, Inc. or its agents of free use of the Airport.

Stockton explained in his affidavit about the "representation" of free use of the Airport as follows: "From a conversation with one of our customers, Jim Mayes of Southwest Airmotive, I learned about the Addison Airport Industrial District property. I learned that such property enjoyed unrestricted and free access to the Airport, ideally suited to my business." Jim Mayes did not own the Airport, so his representation was not the representation of the owner of the alleged servient estate. Stockton also argues that his statement in paragraph 8 of his affidavit, "I would have never bought Lots 13 and 14 and improved the property if they didn't have free and unrestricted access to the Airport," is some evidence Addison Airport, Inc. or its agents represented to him that he had free unrestricted use of the Airport. We disagree. This statement shows only that he had free and unrestricted use of the Airport, at least until the City tried to limit his access, but it is no evidence that Addison Airport, Inc. or its agents made a representation to him that he would have free and unrestricted use of the Airport. We conclude Stockton's affidavit presented no evidence that Addison Airport, Inc. or its agents made any representation to him about free use of the Airport.

Appellants also assert the brochure advertising the Industrial District promised free use of the Airport. The brochure may promise access, but it does not promise *free* access, and it does not promise that the Airport has no right to impose conditions such as fees or licenses on the use of the Airport's taxiways, runways, and public areas. Thus, the brochure is no evidence appellants were promised free use of the Airport.

Appellants also assert the deposition of Henry Stuart, the owner of Addison Airport, Inc., shows they had free access. Stuart testified he knew the owners of lots in the Industrial District had access to the Airport because he had seen them use the Airport. But Stuart also testified he did not know what conditions, if any, were imposed for their access. Accordingly, his deposition is no evidence appellants were promised free use of the Airport.

▪ Appellants also rely on the statements in Buce's and Stockton's affidavits that they used the Airport without a license or paying fees for many years. They assert these facts are evidence Addison Airport, Inc. or its agents represented to them that they would have free use of the Airport. We disagree. These statements are evidence only of what they say, that Buce and Stockton used the Airport without a license or fee; the statements are not evidence of a representation at or before the time Stockton and Buce improved their properties that they had free use of the Airport. Mere passive acquiescence to use does not create an easement by estoppel where there is no vendor-vendee relationship between the owners of the alleged servient and dominant estates. *Stallman v. Newman,* 9 S.W.3d 243, 247 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). The evidence is uncontroverted that appellants did not purchase their lots from Addison Airport, Inc. Accordingly, Addison Airport, Inc.'s acquiescence to appellants' use of the Airport until 1980 is no evidence that Addison Airport, Inc. represented to appellants that they had free use of the Airport.

The City also asserts appellants presented no evidence they relied on the representation. Because no evidence shows Buce and Stockton received any representation about free use of the Airport from Addison Airport, Inc. or its agents, we address only LaTaste's reliance. LaTaste stated in his affidavit that he spent substantial sums building hangars and airplane storage facilities on his lots. The

City argued in its motion for summary judgment that to prove reliance, appellants had to show they spent money building improvements to the servient estate, the Airport. The case the City relied on for this proposition states the doctrine of easement by estoppel "has been applied when the seller allows the purchaser to expend money on the 'servient' tract." *Drye*, 364 S.W.2d at 210. However, the court in *Drye* goes on to state that "estoppel cases are not limited to this kind of expenditure." *Id.* Other cases provide that reliance may be shown by improvement of the dominant estate. *Mack v. Landry*, 22 S.W.3d 524, 529 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Holden v. Weidenfeller*, 929 S.W.2d 124, 132 (Tex.App.-San Antonio 1996, writ denied). We conclude that La-Taste's statement in his affidavit that he spend thousands of dollars building hangars and aircraft storage facilities on his property in reliance on Addison Airport, Inc.'s representation that he would have free use of the Airport is some evidence of reliance under the doctrine of easement by estoppel.

We hold the trial court erred in granting the City's motion for summary judgment on easement by estoppel against LaTaste Enterprises. We also hold the trial court did not err in granting the City's motion for summary judgment on easement by estoppel against Stockton and Buce. We resolve appellants' first issue in LaTaste Enterprise's favor and against Buce and Stockton.

### IMPLIED EASEMENT

 In their second issue, appellants question whether the trial court erred in granting the City's motion for summary judgment on appellants' claim of implied easement. When an owner conveys part of his land, he impliedly conveys all apparent or visible easements on the part retained that were used by the owner for the benefit of and are reasonably necessary for the use of the part conveyed. *Holmstrom v. Lee*, 26 S.W.3d 526, 531 (Tex.App.-Austin 2000, no pet.). In determining whether an easement should be implied, we consider factors such as the terms of the conveyance, the necessity of the easement, the manner of use before the conveyance, and the extent to which the earlier use was known to the parties. To prove an implied easement, the owner of the alleged dominant estate must prove: (1) unity of ownership between the dominant and servient estates; (2) apparent use of the easement at the time the dominant estate was granted; (3) continuous use of the easement; and (4) that the easement is reasonably necessary to enjoy the use of the dominant estate. *Holden*, 929 S.W.2d at 128–29. Whether these requirements are met is determined at the time of the severance of the estates. *Id.* at 129; *see Holmstrom*, 26 S.W.3d at 531 (existence of easement determined from time the defendant signed deed of trust to bank, not from time when bank sold property to the plaintiffs following foreclosure).

The City argued in its motion for summary judgment that appellants presented no evidence of unity of ownership of the alleged dominant and servient estates during the use of the asserted easement of free use of the Airport. To resolve this issue, we must first determine when the severance of ownership of the dominant and servient estates occurred. There are three possible dates when severance may have occurred: (1) May 1960 when Addison Airport, Inc. assigned the lease for the property constituting the Industrial District to the Limited Partnership; (2) August 1962 when the Limited Partnership exercised the option on the lease and purchased the property; and (3) 1963 and thereafter when the Limited Partnership sold the lots to appellants or their prede-

cessors. Under the City's argument, severance of ownership of the Airport from the Industrial District occurred either in May 1960 or August 1962; under appellants' argument, severance occurred when the Limited Partnership sold the lots in the Industrial District.

Appellants argue that even though Addison Airport, Inc. assigned the lease to the Industrial District property to the Limited Partnership in May 1960, Addison Airport, Inc. remained the owner of the Industrial District property until the sale of the individual lots in the Industrial District for the purpose of implied easements. Appellants rely on *Houston Bellaire, Ltd. v. TCP LB Portfolio I, L.P.*, 981 S.W.2d 916 (Tex. App.-Houston [1st Dist.] 1998, no pet.), in support of this argument. In that case, Moore purchased the northern half of a seven-acre tract and an option to purchase the southern half. Moore conveyed the northern half to a joint venture, Corporate Plaza 1, owned by him, another individual, and two trusts with each individual or trust having a twenty-five percent interest in the joint venture. *Id.* at 918. Three months later, Moore exercised the option on the southern half of the property and transferred it to another joint venture, Corporate Plaza 2, owned by him, the other individual in Corporate Plaza 1, and one of the two trusts in Corporate Plaza 1, with Moore and the other individual each having a twenty-five percent interest in the joint venture and the trust having a fifty percent interest. *Id.* Office buildings (Building 1 and Building 2) were built on each of the tracts, and the buildings shared a driveway and a parking lot between them. *Id.* at 918–19. Subsequently, the property was foreclosed on and the two tracts with their buildings were sold to different owners. The new owner of Building 1 tried to build a fence preventing joint use of the parking lot and driveway. *Id.* at 919. The new owner of Building 2 brought suit, alleging it had an implied easement to use the parking lot and driveway on Building 1's half of the property. *Id.* The owner of Building 1 asserted there was no implied easement because there was no unity of ownership because the two halves of the property were owned by different joint ventures when the alleged easement was created. *Id.* The court of appeals examined case law from other jurisdictions and concluded there was unity of ownership when the property was owned by the two joint ventures because "[t]he ownership of the two joint ventures was sufficiently similar, the two properties were developed as part of a common plan and project, and they were intended as one economic unit consisting of two phases and two buildings situated on 7.1414 acres." *Id.* at 921.

This case, however, is distinguishable from *Houston Bellaire, Ltd.* In this case, the ownership of the Airport and the Industrial District after assignment of the lease to the Limited Partnership were not as similar as the ownership of the two joint ventures in *Houston Bellaire, Ltd.* In this case, Addison Airport, Inc. was either the sole lessee or the sole owner [4] of the Airport, with complete control over the construction and operation of the Airport, and Crow had no interest in the Airport, either financially or otherwise. In the Limited Partnership, Crow managed the business, and Addison Airport, Inc., as a limited partner, had no authority to control the running of the partnership. Furthermore, unlike the facts of *Houston Bellaire, Ltd.*, the construction of the Industrial District

---

4. The record is not clear when or if Addison Airport, Inc. exercised the option to purchase

the land on which it built the Airport.

was not part of a single commercial enterprise with the Airport. The only evidence in the record concerning how the Industrial District came into being shows that after building the Airport, Addison Airport, Inc. decided to develop the leftover seventy-four acres it was leasing and joined with Crow to develop that property. We conclude there is no evidence of unity of ownership of the alleged dominant and servient estates at the time the lots were marketed and sold to appellants or their predecessors.

Thus, the severance of the alleged dominant and servient estates occurred either when Addison Airport, Inc. assigned part of its lease to the Limited Partnership [5] or when the Limited Partnership purchased the property from the lessor.[6] In this case, we need not determine which date marked the severance of the alleged dominant and servient estates. Appellants assert there is evidence the alleged easement of the right to use the Airport from the Industrial District free from any license or fees was already in effect from either date. We disagree. There is evidence the Limited Partnership intended from the inception of the Limited Partnership for owners of lots in the Industrial District to use the Airport's taxiways, runways, and public areas, but there is no evidence this usage was intended to be free from charges, fees, or any other conditions until the property was marketed to LaTaste in 1967, at least five years after the latest date on which severance of the alleged dominant and servient estates occurred.

Because appellants produced no evidence of one of the required elements for an implied easement, the trial court did not err in granting summary judgment on appellants' claim of implied easement. We resolve appellants' second issue against them.

## EASEMENT BY EQUITY

█ In their third issue, appellants assert the trial court erred by granting summary judgment on their claim that they are entitled to an easement of free use of the Airport under principles of equity. Aside from its claim of easement by estoppel, appellants did not plead any claim of easement through principles of equity. A plaintiff cannot recover on a claim that was not pleaded. *Bayou Terrace Inv. Co. v. Lyles,* 881 S.W.2d 810, 817 (Tex.App.-Houston [1st Dist.] 1994, no writ). Accordingly, we conclude this argument lacks merit. We resolve appellants' third issue against them.

We reverse the summary judgment rendered against LaTaste Enterprises as to its claim of easement by estoppel, and we remand that claim to the trial court for further proceedings. In all other respects, we affirm the trial court's judgment.

---

5. Immediately following the assignment, the property containing the Airport and the Industrial District was owned by one individual, the lessor, but leased to two different entities, Addison Airport, Inc. and the Limited Partnership.

6. At that time, the Airport property was either owned by Addison Airport, Inc. or it was owned by the lessor and leased to Addison Airport, Inc., and the Industrial District property was owned by the Limited Partnership.