**AFFIRM; and Opinion Filed July 19, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00346-CV

### HAZZANI, LLC, Appellant
### V.
### RICHARDSON BUS. CENTER, LTD., Appellee

### On Appeal from the 14th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-17-05236

## MEMORANDUM OPINION
Before Justices Myers, Molberg, and Carlyle
Opinion by Justice Molberg

Hazzani, LLC (Hazzani) appeals the trial court's final judgment, after a bench trial, granting Richardson Business Center, Ltd. (RBC) an easement for vehicle access through a concrete driveway between the parties' respective commercial properties and across Hazzani's property. In a cross-appeal, RBC challenges the trial court's denial of its request for attorney's fees. In two issues, Hazzani contends: (1) the trial court erred in granting RBC a prescriptive easement, and (2) the evidence at trial did not support any conclusion RBC established an easement by estoppel.[1] In two issues on cross-appeal, RBC contends: (1) the trial court abused its discretion by denying RBC's request for attorney's fees, and (2) in the event this court reverses the trial

---

[1] RBC pleaded theories of easement by prescription and easement by estoppel. The final judgment does not specify whether the alleged easement was created by prescription or estoppel. On appeal, Hazzani contends the trial court granted RBC a prescriptive easement; and, in any case, the evidence at trial did not satisfy the requisite elements for easement by estoppel.

court's judgment granting RBC an easement, the trial court erred by not allowing testimonial evidence regarding RBC's damages.

We affirm the trial court's judgment.

## Background

In 1992, RBC—which exists through a series of complex business arrangements, including a corporation, a general partnership, and a limited partnership—purchased an approximately six-acre tract of land on North Plano Road (Plano Road) in Richardson, Texas (RBC property).[2] The RBC property has two vehicle driveways opening to Plano Road, both of which allow vehicles exiting the RBC property only to turn right onto southbound Plano Road. To enter the northbound lanes of Plano Road, vehicles utilizing RBC's vehicle driveways must travel approximately twenty to fifty feet on southbound Plano Road and make a u-turn at a break in a traffic island. Correspondingly, only vehicles traveling south on Plano Road may utilize RBC's vehicle driveways to enter the RBC property directly from Plano Road; vehicles traveling north on Plano Road must make a u-turn at a break in a traffic island north of the RBC property to enter the RBC property utilizing RBC's driveways.

In 2012, Hazzani—which is owned by Dr. Jianlin Li and Dr. Tsai[3]—purchased the approximately six-acre, adjacent tract of land to the north of the RBC property (Hazzani property).[4] The Hazzani property also has two vehicle driveways opening to Plano Road. A break in a traffic island on Plano Road allows both northbound and southbound traffic to enter and exit the Hazzani property utilizing Hazzani's vehicle driveways.

---

[2] The RBC property houses four office buildings.

[3] Dr. Tsai's first name was not provided at trial.

[4] The Hazzani property houses one industrial building.

A twenty-five to thirty-foot wide, curbed, two-lane, concrete vehicle driveway connects the RBC property to the Hazzani property in the approximate center of the parties' shared property line (common access drive).[5] The majority of the common access drive is on the Hazzani property. The common boundary on the remainder of the property line is an elevated landscape with concrete curbs.

To avoid making a u-turn on Plano Road, vehicles en route to the RBC property from northbound Plano Road, and vehicles departing the RBC property to northbound Plano Road, ingress and egress to and from Plano Road using the Hazzani vehicle driveways, drive through the Hazzani property, and use the common access drive to enter and exit the RBC property. According to Brad Mindlin, the common access drive has been utilized in this manner since 1992, when RBC purchased the property.[6]

Mindlin testified that when real estate occupancies rose in the late 1990's—before Doctors Li and Tsai purchased the property—tenants and employees of the property currently owned by Hazzani used the common access drive to park on the RBC property. Likewise, RBC tenants and employees used the common access drive to park on the property currently owned by Hazzani. This cross-property parking activity caused "parking issues," "a lot of disarray in the parking lots," and damage to the common access drive. As a result, Mindlin and his "property managers and engineers of a company that [he] owned and managed" discussed "a general repair of the access easement and the parking drive and who's going to park on where" with the prior owners of the Hazzani property. According to Mindlin, RBC and the prior owners of the Hazzani property "reach[ed] agreements on repairs," and did not "shut down the cross-parking."

---

[5] A center stripe divides the common access drive.

[6] Mindlin owns the corporation that is a general partner of the limited partnership that owns RBC, and he also owns individual partnership shares in RBC. Mindlin manages both of the general partners of the limited partnership.

James Ray Jackson, chief engineer for the RBC property from 1993 to 2014, testified that that "all the way back to '97, '98, [up] through 2000," RBC was "involved in repairs that were made at the access point between the two properties." Jackson "talk[ed] to the folks on the Hazzani side, the predecessors in title, about repairing their side of the property," and repairs were made on "both sides" of the property line. According to Jackson, most of the repairs were "minor" curb repairs.[7] Jackson testified that the "main" repair was replacement of the common access drive in 2012.

In its response brief on appeal, RBC claims it made repairs on the Hazzani property "at its sole cost for approximately 20 years before Hazzani purchased the property," but RBC does not cite to the record, and we did not locate evidence in the trial record that RBC paid for any repairs "at its sole cost." Jackson testified he knew the Hazzani property owners "shared in the cost" of the 2012 repair, and he did not know if the prior owners shared in the cost of the prior repairs. Jackson did not discuss specific repairs or the cost of repairs with Mindlin until the 2012 repair. During trial, the trial court stated, without objection, "There is undisputed testimony that the parties shared in significant repairs over time."

Monta Lee Lebkowsky has managed a number of real estate properties for Mindlin, and she has been RBC's property manager since May 2008. The week after Dr. Li and Dr. Tsai purchased the Hazzani property, Lebkowsky called Dr. Li and asked him to repair "broken concrete" in the common access drive at his cost. Lebkowsky testified a "chughole [was] developing [and] getting pretty large," and she "was concerned that it was going to ultimately break loose and be even a larger liability for everyone." Dr. Li declined to pay for the entire cost of the repair. E-mails introduced into evidence at trial between Dr. Li and Lebkowsky confirm

---

[7] Jackson initially testified that most of the repairs were minor. Subsequently, he testified that "major" repairs were made in 1997 and 2005. The 1997 repair involved replacing the "middle" of the driveway. The trial record does not otherwise refer to or reflect the nature of a repair in 2005.

that Lebkowsky talked to Dr. Li about repairing the driveway; Dr. Li obtained the initial bids for the repair work; and Dr. Li asked Lebkowsky if RBC would pay for half of the cost of the repair work. In a reply e-mail, Lebkowsky stated, "I will be happy to participate in the cost, but that being said, I would like to review the bids if I am going to be paying for some of it." The parties ultimately used a contractor who submitted a bid at RBC's request, with each party paying $1,240, half the cost of the repair. The 2012 repair, in which concrete was re-poured to replace the "entire drive," is the most recent repair to the common access drive. After the 2012 repair, RBC and Dr. Li did not discuss the common access drive until April 2017, when Dr. Li installed "No Thru Traffic" signs at the common access drive connection point.

After purchasing the Hazzani property, Dr. Li initially permitted vehicles en route to or exiting the RBC property to cross the Hazzani property to access Plano Road, as they had been doing for many years prior. He testified that in 2012, "[i]t was not my intention to close [off]" the common access drive. According to Dr. Li, he was not concerned when he first noticed vehicles using the common access drive, because "it was just occasional use and then [he] did not receive any employees complaining at all them [sic] driving too fast." However, over time, increased cross-through traffic caused problems. Beginning in approximately 2015, Dr. Li began receiving complaints from his tenants, visitors, and employees that vehicles entering and exiting the RBC property through the common access drive were speeding on the Hazzani property and causing traffic jams throughout the day by waiting long periods of time to cross over southbound Plano Road and turn left onto northbound Plano Road. According to Dr. Li, the problems were exacerbated in 2016 and 2017 by "a significant increase [in] traffic on Plano Road . . . related to State Farm putting about 12,000 employees [just] a few miles north of [the Hazzani property]." Dr. Li testified that not only did the number of vehicles entering his property en route to RBC via the common access drive increase in 2015 and 2016, the number of vehicles speeding through his

–5–

property also increased, causing two accidents and several near-accidents. Additionally, a "church school" became a tenant on the Hazzani property in 2016, and "[Dr. Li and his employees] observed the kids . . . sometimes running around on the parking lot." Dr. Li testified he was concerned about the children's safety because of the "high-speed traffic on [his] property."

Because of these problems and complaints, in April 2017 Dr. Li posted "No Thru Traffic" signs at the common access drive connection point between the Hazzani and RBC properties, and later placed traffic cones across the common access drive when cross-through traffic continued.[8] At trial, Dr. Li confirmed he did not "make any objections to [RBC] about all the people driving over [his] property" and did not "talk to the [RBC] folks about blocking the drive."

Lebkowsky e-mailed Dr. Li on April 14, 2017 regarding the "No Thru Traffic" signs and Dr. Li's decision to prohibit further use of his property for Plano Road ingress and egress to and from the RBC property. Initially, Lebkowsky claimed Dr. Li's actions potentially were barred by fire code regulations. In the same e-mail, Lebkowsky asked Dr. Li, "is there some type of easement that needs to be honored between the two properties," and she said she needed to check city property records to determine whether an easement existed. At trial, Lebkowsky testified she had "no idea at the time [whether] there was an easement." Lebkowsky testified the city informed her there was no recorded easement. The evidence at trial, including e-mails from the City of Richardson, showed fire code regulations did not bar Dr. Li from preventing use of the common access drive, and no easement was recorded in city records. E-mails from the city stated, "The crossover opening can be closed as there is nothing in the city files that requires [sic] to remain open," and "[i]n fact, on 701 N. Plano [the Hazzani property], it is striped as a no parking area and on the property to the south, 651 [the RBC property], there are parking spaces [indicated]."

---

[8] Dr. Li testified that prior to posting the "No Thru Access" signs, he "looked at the City of Richardson's [web]site" to confirm there was not an "easement agreement."

A title survey and public record search conducted by Dr. Li prior to his purchase of the Hazzani property did not reveal the existence of an easement or any other encumbrance on the shared border between the Hazzani and RBC properties. The survey, which was introduced into evidence at trial, showed the existence of the common access drive and indicated several easements on the Hazzani property. The common access drive, however, was not designated as an easement on the survey. Dr. Li testified he walked the Hazzani property prior to purchasing it, and did not "ask anybody why the common access drive was there."

On May 3, 2017, RBC filed suit requesting a declaratory judgment that the Hazzani property is burdened by an easement by prescription or an easement by estoppel. RBC alleged the easement gave it the right to enter and exit the Hazzani property using the common access drive and use the drive lanes on the Hazzani property to access Plano Road (Access Easement). RBC additionally sought injunctive relief preventing Hazzani from interfering with RBC's use of the Access Easement, monetary relief of more than one million dollars, and attorney's fees. Hazzani counterclaimed against RBC for trespass and requested a declaratory judgment that no easement for RBC's benefit exists on the Hazzani property. Hazzani additionally requested injunctive relief barring RBC from entering the Hazzani property and attorney's fees.

On or about December 14, 2017, RBC entered into an Agreement of Purchase and Sale of Real Property and Escrow Instructions for the sale of the RBC property to a Texas limited partnership (RBC Purchase and Sale Agreement). In a January 12, 2018 amendment to the RBC Purchase and Sale Agreement (RBC Purchase and Sale Amendment), RBC agreed to prosecute this lawsuit on behalf of the purchaser; and, the purchaser agreed to "go nonrefundable" and accept the property "as is," including "anything related in any way to access or easement" and the outcome of this lawsuit. At the time of trial, the RBC property was in escrow, but the sale had not yet closed.

Following a bench trial, the trial court granted judgment in favor of RBC, stating at the hearing that "the use of the property over a number of decades makes clear [RBC's] right to the continued access of the [Hazzani] property." The trial court's final judgment declared that "an easement exists for vehicle access through the existing concrete drive . . . and across the Hazzani Property for the purpose of ingress and egress to and from North Plano Road," dismissed Hazzani's counterclaims with prejudice, and denied all other requested relief not expressly granted. The final judgment did not specify whether the easement was acquired by prescription or estoppel. The parties submitted competing proposed findings of fact and conclusions of law with the trial court. The trial court did not make findings of fact and conclusions of law.

## Standard of Review

In a bench trial, when the trial court does not make findings of fact or conclusions of law, we imply all findings necessary to support the judgment, provided the necessary findings are raised by the pleadings and supported by the evidence. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *APMD Holdings, Inc. v. Praesidium Med. Prof'l Liab. Ins. Co.*, 555 S.W.3d 697, 706 (Tex. App–Houston [1st Dist.] 2018, no pet.). When, as in this case, the record on appeal contains the reporter's record, the trial court's implied findings may be challenged for legal and factual sufficiency under the same standards that govern challenges to a jury's findings. *APMD Holdings*, 555 S.W.3d at 706. The trial court's judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Woford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). Therefore, to prevail on appeal, Hazzani must show the trial court's judgment cannot be sustained by any theory raised by the record.

## Easement by Estoppel

In its second issue on appeal, Hazzani contends the evidence at trial does not support a finding of easement by estoppel because: (1) RBC failed to present evidence that Hazzani or its

–8–

predecessors-in-interest made a representation that would lead a reasonable person to believe that RBC was entitled to an easement across the Hazzani property; (2) RBC failed to present evidence that it relied to its detriment upon any such representation in a legally cognizable way; (3) RBC failed to present evidence that Hazzani had notice of the purported easement at the time Hazzani purchased the property; and (4) RBC failed to present evidence of a vendor-vendee relationship supporting the asserted easement. Hazzani argues the trial court's statement at the conclusion of trial, "I do find that the use of the property over a number of decades makes clear their right to the continued access of the property," precludes a finding of easement by estoppel as a matter of law because the passage of time is not relevant to an easement by estoppel; and, therefore, the trial court must have premised its finding of an easement on a prescriptive theory—the only other theory pleaded by RBC.

An easement is the privilege to use another person's tract of land for some limited purpose. *LaTaste Enter. v.City of Addison*, 115 S.W.3d 730, 735 (Tex. App.—Dallas 2003, pet. denied). The tract of land on which the easement is imposed is the servient estate, in this case, the Hazzani property; the tract of land benefitted by the easement is the dominant estate, in this case, the RBC property. *See Drye Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207 (Tex. 1962). Under the statute of frauds, easements, as a general rule, are required to be in writing. *Sandoval v. Cmty. Missionary Baptist Church*, No. 05-17-00456-CV, 2018 WL 1773208, at *3 (Tex. App.—Dallas Apr. 13, 2018, pet. denied) (mem. op.); *see also Storms v. Tuck*, 579 S.W.2d 447, 451 (Tex. 1979). An easement by estoppel is an exception to the requirement of a writing and is a creature of equity designed to prevent injustice and protect innocent parties from fraud. *Storms*, 579 S.W.2d at 451; *see also Machala v. Weems*, 56 S.W.3d 748, 756 (Tex. App.—Texarkana 2001, no pet.). It is grounded on the notion that justice forbids one to gainsay his own acts or assertions which induced another to act detrimentally in reliance upon them. *See Fiengo v. Gen. Motors Corp.*, 225 S.W.3d

858, 861 (Tex. App.—Dallas 2007, no pet.). The doctrine is not clearly defined, and must be applied considering the specific facts of the case. *Drye*, 364 S.W.2d at 109–10; *see also Machala*, 56 S.W.3d at 756.

Under the doctrine of easement by estoppel, the representations of the owner of the alleged servient estate may estop that owner from denying the existence of an easement when those representations have been relied on by the owner of the alleged dominant estate. *LaTaste*, 115 S.W.3d at 735. The gravity of a judicial means of acquiring an interest in land of another solely by parol requires that equitable estoppel be strictly applied. *Sandoval*, 2018 WL 1773208, at *4. The estoppel "should be certain, precise and clear." *McAnally v. Friends of WCC, Inc.*, 113 S.W.3d 875, 879 (Tex. App.—Dallas 2003, no pet.). Moreover, one of the requirements of an easement by estoppel is "that nothing be required of the grantor to perpetuate the easement." *Drye*, 364 S.W.2d at 212. "The easement which is implied is a negative one: that the grantor simply not interfere." *Id.* (distinguishing between alleged easement that requires "no act of the grantor" and alleged easement with "more difficult problems" such as "the question as to who is to pay taxes . . . indefinitely" on property).

Texas courts are split as to whether a vendor-vendee relationship is required for a finding of an easement by estoppel. *Compare LaTaste*, 115 S.W.3d at 736 ("Mere passive acquiescence to use does not create an easement by estoppel where there is no vendor-vendee relationship between the owners of the alleged servient and dominant estates"), *Pewitt v. Terry*, No. 03-12-00013-CV, 2012 WL 4052135, at *4 (Tex. App.—Austin Sept. 13, 2012, no pet.) (mem. op.) ("this Court has held that a vendor/vendee relationship must exist between the party making the representation and the party claiming to have relied on it" to establish easement by estoppel) (citing *Scott v. Cannon*, 959 S.W.2d 712, 720 (Tex. App.—Austin 1998, pet. denied)), *Ross v. Womack*, No. 13-04-571-CV, 2006 WL 3628042, at *6 (Tex. App.—Corpus Christi Dec. 14, 2006, no pet.)

(mem. op.) ("mere silence cannot create an easement by estoppel except where there is a vendor-vendee relationship between the parties"), *and Tice v. Hunt*, No. 11-08-00099-CV, 2010 WL 1948602, at *6 n.2 (Tex. App.—Eastland May 13, 2010, no pet.) (mem. op.) (concluding evidence did not establish easement by estoppel and declining as unnecessary to address whether "vendor/vendee relationship must be shown in order to establish an easement by estoppel"), *with Smith v. Reid*, No. 04-13-00550-CV, 2015 WL 3895465, at *7 (Tex. App.—San Antonio June 24, 2015, pet. denied) (mem. op.) ("In the absence of a vendor/vendee relationship, there was no duty on [alleged servient estate owner] to caution or warm [claimant of alleged easement by estoppel] or his predecessors-in-title that they should make no improvements upon their property without a secure right of ingress and egress appurtenant to their land"), *McClung v. Ayers*, 352 S.W.3d 723, 729 n.2 (Tex. App.—Texarkana 2011, no pet.) ("We decline to require [the existence of a vendor-vendee relationship] in order to establish an easement by estoppel"), *S. Plains Lamesa R.R., Ltd. v. Heinrich*, 280 S.W.3d 357, 361 (Tex. App.—Amarillo 2008, no pet.) (concluding vendor-vendee relationship not required to establish easement by estoppel), *and Murphy v. Long*, 170 S.W.3d 621, 628 (Tex. App.—El Paso 2005, pet. denied) (declining to find easement by estoppel requires vendor-vendee relationship between the parties); *Mack*, 22 S.W.3d at 530 (concluding easement by estoppel existed without vendor-vendee relationship).

Following our precedent in *LaTaste*, we need not address whether a vendor-vendee relationship is required to establish an easement by estoppel because Hazzani did not merely passively acquiesce to RBC's use of the common access drive to traverse the Hazzani property for ingress and egress to and from Plano Road. *See LaTaste*, 115 S.W.3d at 736. To the contrary, Hazzani actively participated in making repairs to the common access driveway almost immediately after purchasing the property.

To establish the existence of an easement by estoppel, RBC had the burden of proving: "(1) a representation of the easement was communicated to the innocent party; (2) the communication was believed; and (3) the innocent party relied on the communication." *Sandoval*, 2018 WL 1773208, at *4; *see also Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998); *see also Storms*, 579 S.W.2d at 452; *Drye*, 364 S.W.2d at 211. The representation may be made by word or by action. *Goodenberger v. Ellis*, 343 S.W.3d 536, 541 (Tex. App.—Dallas 2011, pet. denied). These elements apply at the time the representation creating the alleged easement is made. *Ingham v. O'Block*, 351 S.W.3d 96, 100 (Tex. App.—San Antonio 2011, pet. denied). Once created, an easement by estoppel is binding upon successors in title of the servient estate if reliance upon the existence of the easement continues. *Id.* However, an easement by estoppel may not be imposed against a subsequent purchaser for value who has no notice, actual or constructive, of the easement claimed. *Goodenberger*, 343 S.W.3d at 541.

In this case, there is evidence RBC used the common access drive to drive through the Hazzani property for over twenty years. RBC made expenditures to repair the curbs and driveway of the common access drive on both the RBC and Hazzani sides of the property line. There is no dispute that both RBC and Hazzani paid half the cost to replace the "entire" driveway of the common access drive in 2012, and both parties participated in obtaining bids for the repair work. Until he erected the "No Thru Traffic" signs in 2017, Dr. Li did not deny access to his property through the common access drive, and Dr. Li testified he had no intention of closing the common access drive when he purchased the Hazzani property in 2012. Accordingly, we conclude there is more than a scintilla of evidence to support the trial court's finding of an easement by estoppel. We resolve Hazzani's second issue against it.[9]

---

[9] Because we conclude there is more than a scintilla of evidence to support the trial court's finding of an easement by estoppel, we need not address Hazzani's first issue—whether the evidence at trial supported the existence of an easement by prescription.

**Attorney's Fees**

In its first issue on cross-appeal, RBC contends the trial court erred in declining to award RBC its attorney's fees. RBC filed this lawsuit under the Texas Uniform Declaratory Judgments Act (DJA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. The DJA provides that the trial court "may award costs and reasonable and necessary attorney fees as are equitable and just." *Id.* The determination of the reasonableness and necessity of an attorney's fees award under the DJA is a question of fact for the trier of fact; whether a trial court's judgment with respect to attorney's fees is equitable and just is a matter of law within the trial court's discretion. *Marion v. Davis*, 106 S.W.3d 860, 868 (Tex. App.—Dallas 2003, pet. denied).

Because the grant or denial of attorney's fees in a declaratory judgment action lies within the sole discretion of the trial court, its judgment will not be reversed on appeal unless the trial court clearly abused its discretion. *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996). Nothing in the record shows the trial court abused its discretion in refusing to award RBC its attorney's fees. The trial court did not file findings of fact or conclusions of law. Without findings of fact establishing the basis for the trial court's exercise of discretion, we cannot conclude as a matter of law that the trial court abused its discretion in declining to award attorney's fees. *Marion*, 106 S.W.3d at 868. We resolve RBC's first cross-issue against it.

We affirm the trial court's judgment.[10]

/Ken Molberg/
KEN MOLBERG
JUSTICE

180346F.P05

---

[10] Because we conclude the trial court did not err in awarding RBC an easement for vehicle access through the common access drive and across the Hazzani property for the purpose of egress and ingress to and from Plano Road, we need not address RBC's second cross-issue on appeal—whether the trial court erred in refusing to hear testimony regarding damages to RBC—which was contingent upon this Court determining an easement did not exist.

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HAZZANI, LLC, Appellant

No. 05-18-00346-CV     V.

RICHARDSON BUS. CENTER, LTD.,
Appellee

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-17-05236.
Opinion delivered by Justice Molberg.
Justices Myers and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee RICHARDSON BUS. CENTER, LTD. recover its costs of
this appeal from appellant HAZZANI, LLC.

Judgment entered this 19th day of July, 2019.